[S. F. No. 986.   Department One.—July 1, 1899.]

JAMES D. BROWN, Assignee, etc., Appellant, v. ANGUS McKAY, Respondent.

TENANCY IN COMMON—ADVERSE POSSESSION—HOSTILE INTENT.—In order to establish adverse possession by a tenant in common against his cotenants, clear and unequivocal proof is required of hostile intent on his part manifested to oust the cotenants.

ID.—PRESUMPTIONS—FATHER AND SONS AS COTENANTS.—All presumptions of law, of fact, and of good morals are against an

adverse holding by a father who became tenant in common
with his sons as heirs of the deceased wife and mother, and who
recognized their title by becoming guardian of their estate and
maintained friendly relations with them until death, and de-
vised his interest to them in one parcel of the inherited realty.

Id.—Unsettled   Guardianship—Lease—Insufficient   Proof   of
Adverse Holding.—The mere facts, in such case, that the
guardianship was never settled, and that the father executed
a lease to one of the sons after he became of age, of another
parcel of the inherited realty, which does not appear to have
been devised by the father, are insufficient to evince a hostile
intent as to such parcel, or to establish an adverse holding there-
of by the father as against the sons.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Bartholmew Noyes, and G. R. Lukens, for Appellant.

David McKay, Sr., recognized the title of his sons, and the
presumption is of a continuing friendly possession for them as
tenant in common with them until clear proof of ouster brought
home to their knowledge, which is not shown to have existed.
(*McCracken v. San Francisco*, 16 Cal. 635; *Miller v. Myles*, 46
Cal. 535; *Northrop v. Wright*, 24 Wend. 221; *Coleman* v.
Clements, 23 Cal. 245; *Culberhouse v. Shirey*, 42 Ark. 25, 28;
*Bannon v. Brandon*, 34 Pa. St. 263; 75 Am. Dec. 655; *Hart v.
Gregg*, 10 Watts, 185; 36 Am. Dec. 166; *Zeller v. Eckert*, 4 How.
289; *Hulvey v. Hulvey*, 92 Va. 182.)

W. S. Goodfellow, and W. B. Bosley, for Respondent.

David McKay had adverse possession after the minors became
of age, under his exclusive control thereafter.   Membership of
the same family is immaterial, where there is exclusive control.
(*Feliz v. Feliz*, 105 Cal. 1.)

GAROUTTE, J.—This is an action of ejectment brought by
the assignee in insolvency against the defendant Angus McKay,
who was also the insolvent debtor.   The facts are these:

Mrs. Mary A. McKay, wife of David McKay, died in 1859,
leaving two sons—this defendant Angus McKay, and David Mc-

Kay, Jr., this defendant then being of the age of five years, and David being still younger. At the time of her death she was the owner of a piece of property in the city of San Francisco, described in this record as the "Dupont street property," and she also possessed a community interest in the piece of property here designated as the "Davis street property." As heirs-at-law of their mother an undivided one-third of the Dupont street property passed to each of the sons, and likewise an undivided one-fourth of the Davis street property. In 1883, defendant Angus McKay was adjudged an insolvent debtor, and his estate was administered upon; the debtor was discharged from his debts and thereafter the then assignee died. No part of the real estate here mentioned was included in the assets of the insolvent's estate. In 1894 David McKay, the father, died, leaving a will. Upon his death it first came to the knowledge of the sons that, as heirs of their mother, they became the owners of the aforesaid interests in the two described tracts of land. Pending the administration upon the father's estate, Angus McKay took out letters of administration upon his mother's estate, and this property under such administration was finally distributed to the sons in the proportions aforesaid. Thereafter this plaintiff was appointed assignee in the insolvency proceedings to succeed his dead predecessor, and now seeks by ejectment to recover the possession of defendant's interest in the land inherited by him from his mother.

The only defense made to this action is the plea of the statute of limitations, defendant now claiming that his father, prior to his death, obtained title to the property here involved, by adverse possession. The trial court declared the facts in accordance with this claim and rendered judgment for defendant. This appeal is taken from that judgment and also from the order denying a motion for a new trial.

Upon a careful examination of the record, the court has arrived at the conclusion that the facts to support the claim of adverse possession in the father are too meager to accomplish that result. The case, in its facts upon the question of adverse possession, is a peculiar one, viewed from various standpoints. It is peculiar in this: Defendant Angus McKay, during the period dating from his mother's death, 1859, to his father's

death, 1894, the period in which the adverse possession must have been created, never knew that he owned an interest in this real estate. Again, in this litigation he is relying upon an adverse possession against himself, created by his father. In other words, he is relying upon title in himself as the heir of his father, whom he claims secured title to this property by adverse possession against him; and he makes such claim in face of the fact that he administered upon his mother's estate after his father's death, claiming throughout those proceedings that the property here involved was her property and passed to him by reason of his heirship. But, however interesting these circumstances may be, they are not determinative of the case, and we pass to the facts upon which the claim of adverse possession in the father is based.

*Eo instanti* upon the mother's death, in 1859, the father and the sons became tenants in common of these two parcels of land. As has been stated, the defendant was then about five years of age, and his brother younger. In 1861 the father, David McKay, filed a petition in the probate court setting forth that his two sons held undivided interests in these two parcels of land as heirs of their mother, and asked to be appointed guardian of their estates. The court made the order of appointment, and the record of the proceeding here ends. The defendant became of age in 1875, and prior to that time there is not a particle of evidence tending to show any adverse claim to this property made by the father against his minor sons. He simply cared for the property, and that was all. He paid the taxes. He collected the rents. He insured the property and made the repairs. No one of these acts in any way or degree is inconsistent with his position as a tenant in common, especially in view of the fact that his minor sons were his cotenants. As substantially settling the question in favor of the title of the minors during their minority, the father's declaration in his petition for letters of guardianship may be cited.

After the arrival of the defendant at years of majority, we find but a single additional circumstance tending in any way to support the theory of the defendant that the father's intentions toward his title were hostile. And this is but a trifle. During the years from 1877 to 1883 the father leased to the de-

fendant the Davis street property, at the monthly rental of one hundred dollars per month. This circumstance, conceding it material as to the Davis street property, is wholly immaterial as to the Dupont street property. Upon the other hand, taking all the facts of the case together, it is incredible that the father of these two boys, before or after their arrival at the age of majority, ever intended to gain title to this property from them by adverse possession. Hostile intent of the party in possession as a cotenant is all-important in such a case, and we feel safe in saying there is no hostile intent manifested here. Certainly, no hostile intent was brought home to the sons. We have the express declaration of the father in 1861 that he had no such intent; and his conduct thereafter is entirely consistent with such declaration. During this whole period, extending up to the very day of his death, the relations of David McKay, senior, with his boys were of the most friendly character. This is shown by the fact that the defendant acted as his agent during his absence, in the collection of rents; that the son David was appointed executor of his last will and testament; that the father advised and counseled with the defendant during his pecuniary embarrassments, and assisted him in the preparation of his petition in insolvency; that under his will, as evidenced by the decree of distribution, he devised in equal shares to his two sons his undivided one-third interest in the Dupont street property. These things show the friendly relations existing between the father and the sons, and the utter improbability that any intent ever existed in the mind of the father at any moment of time to supplant the title of his sons in these lands by a title of his own under a claim of adverse possession. As an additional consideration looking to this conclusion, it may be said that the father was half a millionaire, as shown by the inventory and appraisement of his estate, while the interest of the defendant in these two lots is appraised at the sum of four thousand dollars.

There is a further consideration which strongly impresses the court with the conclusion that McKay, Sr., never claimed title to the interest of his sons in this property. By the inventory and appraisement filed in his estate his interest in the Dupont street lot is described as an undivided one-third thereof; and by

the decree of distribution an undivided one-third of said Dupont street lot is distributed to the two sons in equal shares. For some reason not understood by the court the will of David Mc-Kay, Sr., is not in the record, but in view of the inventory and appraisement and the decree of distribution it is evident that David McKay, by his will, did not attempt to dispose of the entire Dupont street property, but only attempted to dispose of an undivided one-third interest therein. Such disposition of his property by his will is wholly inconsistent with a claim of title in him to the entire tract, and it is almost conclusive evidence that he never at any time made such claim. This being the status of the Dupont street lot, we safely assume if he made no claim of title in himself to that property he likewise made no claim to the Davis street property.

All presumptions of law, of fact, and of good morals are against an adverse holding in a case possessing the features of this case; and to overcome those presumptions there must be a showing by the record of clear, direct and unequivocal acts upon the part of the adverse holder, indicating an intention to claim the property as his own. Such a case is not made out by this record. It may be further suggested that the case disclosed by the record is not one of conflicting evidence.

For the foregoing reasons the judgment and order are reversed and the cause remanded for a new trial.

Van Dyke, J., and Harrison, J., concurred.

Hearing in Bank denied.