[S. F. No. 2025.   Department One.—July 22, 1902.]

SARAH G. TULLY et al., Appellants, v. MARY E. TULLY et al., Respondents.

DIVORCE—ALIMONY—CONVEYANCE BY HUSBAND—FRAUD UPON WIFE— DEED NOT VOID, BUT VOIDABLE PRO TANTO.—A conveyance by a husband, pending an action by his second wife for divorce and alimony, to the children of his former wife, is not entirely void, but only voidable so far as it affected the rights of existing creditors, including the second wife, who, being entitled to alimony and sup- port, may be considered as a creditor, and after payment or extinction of the obligation, the residue of the property conveyed must go to the grantees, and not to the heirs of the husband.

ID.—REMARRIAGE—EXTINCTION OF CLAIM FOR ALIMONY—TITLE OF GRANTEES.—Where the wife's alimony was made by the decree of divorce a charge and lien upon the property conveyed by the husband, and thereafter the husband and wife remarried, the decree for alimony was thereby extinguished, and the lien discharged, and the grantees continued to hold the legal title, freed from the lien.

ID.—POSSESSION BY HUSBAND AND PAYMENT OF TAXES—ADVERSE POSSESSION NOT PRESUMED—CONFIRMATION OF TITLE.—The fact that the husband, after the conveyance to his children by the former marriage, remained in possession and paid taxes upon the land conveyed after his remarriage, up to the time of his death, nine years after the conveyance, does not raise the presumption of a holding adverse to his grantees, in the absence of any evidence that he ever assumed hostility to their title, the contrary of which is indicated by one of his last acts, in making a deed of confirmation of their title.

ID.—GRANTEES NOT ESTOPPED BY CONFIRMATION—DEED FROM HUSBAND TO WIFE.—The grantees are not estopped by accepting the deed of confirmation from relying upon the first conveyance to them, as passing the legal title, of which they were never divested; and their original title could not be affected by a deed from the husband to the wife of one third of the property, in pursuance of an agreement made after the original conveyance and before the second marriage.

ID.—STATUTE OF LIMITATIONS—TRUST NOT CREATED.—No trust was created, either express or implied, in the grantees of the husband in favor of the second wife which could save her action against them from the operation of the statute of limitations.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. G. Lorigan, Judge.

The facts are stated in the opinion of the court.

H. V. Morehouse, F. J. Hambly, D. W. Herrington, and D. W. Burchard, for Appellants.

Nicholas Bowden, Archer & Archer, and S. F. Leib, for Respondents.

VAN DYKE, J.—The court below sustained a demurrer to the third amended complaint. Upon the plaintiffs declining to further amend, judgment was entered in favor of the defendants. From this judgment the appeal is taken, accompanied by a bill of exceptions. The grounds of the demurrer were: 1. That the facts stated in the complaint do not state a cause of action; and 2. That the action is barred by the statute of limitations.

From the complaint it appears that the plaintiff Sarah G. Tully married John Tully, deceased, February 29, 1884; said Tully at the time was a widower, and the defendants, except Maurice Higgins, are his children by the former wife, who died in 1881; that the plaintiff Sarah G. Tully, owing to the dissipated and licentious habits of said John Tully, deceased, instituted a suit of divorce July 29, 1885; that thereafter, August 1, 1885, the said John Tully conveyed his property, consisting of several separate tracts of land, and also some personal property, to his children by the former wife, the defendants herein. Thereupon the plaintiff in said action for divorce amended her complaint by making the grantees in said conveyances, defendants herein, parties to said action. The findings and decree in that action for divorce are appended to the complaint herein and made a part thereof. In said findings it is recited: "That said conveyances were without any valuable consideration from said grantees to said grantor, and were made by the said defendant John Tully because of the institution of this action, and for the purpose of defrauding the plaintiff out of any interest which she might assert or seek to establish as to said property by or through this action, or any benefit she might derive in this action from the ownership and possession of said property by said defendant." And, as conclusions of law, the court finds that the plaintiff therein was entitled to a dissolution of the bonds of matrimony, and to the custody of an infant child (which appears to have been born after the institution of the suit); and that she was entitled to permanent alimony for the support of herself and the said minor child in the sum of fifty dollars per month until the further order of the court; "that the conveyances of the defendant John Tully to the other defendants herein are fraudulent, inoperative, and void as to any interest or claim of the plaintiff therein or thereto as his said wife." And in the decree entered upon the findings it is adjudged that John Tully pay to the plaintiff therein, Sarah G. Tully, the sum of fifty dollars per month for the support and maintenance of herself and said infant, "and the payment thereof, and of any other sum which may be hereafter awarded instead thereof, is hereby secured and charged and declared a lien upon that certain tract of land mentioned in the complaint and described as follows: Three hundred and seventy acres of land

bounded north and east by the county road, south by lands
of Weather, Tuers, and Riordan, on the west by the Coyote
Creek.'' And it is further adjudged ''that the conveyance
by said John Tully, of his private property to his co-defend-
ants, his children by a former marriage, was and is inoperative
and void as to any interest or claim of plaintiff therein or
thereto as his said wife.'' The decree in the divorce suit was
entered May 14, 1886, and a little over one month thereafter,—
to wit, June 19, 1886,—the parties thereto remarried and lived
together until said John Tully died, November 26, 1894. The
plaintiffs herein, other than Sarah G. Tully, are the minor
children of said Sarah G. Tully and John Tully, deceased.
It is averred in the complaint herein that prior to his (said
John Tully's) death he, wishing to protect the plaintiff, Sarah
G. Tully, on the 20th of September, 1894, in part fulfillment
of his marriage contract with her, executed and delivered to
her a grant, bargain, and sale deed for one undivided third
interest in and to said lands and premises, which deed is ap-
pended to and made a part of the complaint herein. It is
further averred that thereafter, on the twelfth day of October,
1894, said John Tully duly made, executed, and delivered to
the defendants herein, other than Maurice Higgins, being his
said children by his former wife, a deed purporting to be in
consideration of love and affection, and for the better main-
tenance, support, and protection of said grantees, in which
he purported to grant and confirm unto the said grantees the
lands and premises described in the former deed by said
John Tully to said children, the defendants herein, which deed
of confirmation is appended to the complaint and made a part
thereof. It is further averred that said deed of confirmation
was made subsequent to and subject to the rights and equities
of the plaintiff growing out of the contract of the second mar-
riage between the said Sarah G. Tully and John Tully, and
subject to her equity to have said one-third interest in said
land conveyed to her free from the pretended claim of said
defendants. It is further set forth in the complaint that
prior to the commencement of this action,—to wit, on the fifth
day of December, 1896,—plaintiff Sarah G. Tully commenced
an action at law in the superior court of said county of Santa
Clara, state of California, against the above-named defend-
ants, save said Maurice Higgins, in the nature of ejectment, to

recover from said defendants her undivided one third in and to the said lands and premises; that summons was thereupon issued, and said defendants duly and regularly appeared in said action and filed their answers therein, claiming to be the owners of said lands and premises, and denying ownership to and in said lands and premises, or any part thereof, upon the part of the plaintiff, said Sarah G. Tully; that said action came on regularly for trial in said superior court, and said court held and decided that the plaintiffs therein could not prove the invalidity of the deeds to said defendants from said John Tully, or that said defendants held the said lands in trust for said plaintiff; that said defendants, upon the trial of said action, offered, and they were admitted, in evidence, deeds to them from said John Tully, made as aforesaid, and thereafter, on the sixth day of July, 1897, the court filed its findings and entered judgment in said action against said plaintiff therein, Sarah G. Tully, and in favor of the defendants herein, save said Maurice Higgins. It is further averred that the defendants are threatening to dispossess the plaintiff from said lands and premises under said judgment. It is also averred that said John Tully remained in possession and control of the land set forth in the deeds of conveyance to the defendants up to the time of his death, claiming the same as his own; that he cultivated and controlled said lands and paid the taxes thereon. It is further averred that the conveyances from said John Tully to his said children, the defendants herein, were procured by false representations and the exercise of undue influence and control and without any consideration. Wherefore it is prayed that it be adjudged and decreed that the defendants have ever since the first day of August, 1885, held said lands and premises in trust, and that the plaintiff Sarah G. Tully be decreed and adjudged to be the owner of an undivided one third of said lands and premises, and that the children of said plaintiff Sarah G. Tully and John Tully, the other plaintiffs herein, be decreed and adjudged to be the owners of an undivided four tenths of the remaining two thirds of said lands and premises, and that it be decreed said defendants make, execute, and deliver in due form deeds to plaintiff Sarah G. Tully of one undivided third, and to the other plaintiffs of four tenths of the remaining two thirds.

1. The deed of conveyance by John Tully to his children

by his first wife was not entirely void, but only voidable so far
as it affected the rights of then existing creditors, and the
plaintiff Sarah G. Tully, being entitled to alimony and support,
may be considered as a creditor. And the findings and decree
in the divorce suit, as will be seen, go to this extent only. In
*Murray* v. *Murray,* 115 Cal. 278,[1] the defendant Owen Murray
deserted his wife, and, in order to defeat her action for main-
tenance, conveyed by deed all his property to his brother,
James Murray. In that case a receiver was appointed and put
in possession of all the property so conveyed, and the court
below by its judgment set aside the transfers and declared the
same to be fraudulent and void. On appeal it was held by
this court that the wife, though not in a strict sense a creditor
of the husband, yet, as concerned her right to maintenance,
was so far within the protection of the statute of frauds that it
avoids transfers made with design to defeat such right, but
added: "The court should not have disturbed the transfers
to James Murray any further than the exigencies of the decree
in favor of the plaintiff required; any property not needed for
securing the maintenance allowed to her, and which can be
restored to the person from whom the receiver took it, as.
provided in the judgment, is that much which, as between
defendants, belongs to James Murray. The court should have
declared precisely what part of the property was to continue
in the hands of a receiver, or otherwise subjected to the satis-
faction of the judgment, and the remainder, if any, should
have been wholly exempted from the effect of the judgment."
The court below in the case at bar held: "That the conveyance
by said John Tully of his private property to his co-defendants,
his children by a former marriage, was and is inoperative and
void *as to any interest or claim of plaintiff therein or thereto
as his said wife,*" and adjudged that the amount awarded for
alimony or maintenance be secured and become a charge and
lien upon one tract of land only (describing the same) of the
various tracts so conveyed. The conveyance in the case at
bar was much more meritorious than the one in the Murray
case. In fact, in the latter case there was not only want of
consideration, but no moral obligation existing; whereas, in
this case a father was providing for the support of his children

[1] 56 Am. St. Rep. 97.

by a former wife, with whom the property in question was accumulated. In *Emmons* v. *Barton,* 109 Cal. 668, it is said: "That in a case like this the judgment should be that the property fraudulently conveyed, or so much thereof as is necessary, be applied to the satisfaction of the debts, and that the residue, if any, go to the grantee. It is not to go into the assets of the estate for any purpose other than the payments of the debts. The residue does not go to the heir; for he stands in the shoes of the fraudulent grantor."

The deed of John Tully passed the title to his children, the defendants, and that title has continued to remain in the grantees. Even the one tract on which a lien was declared to secure payment of the alimony did not divest them of the legal title, but simply rendered that tract subject to the payment of said alimony. And the fact that Tully remained in possession of the premises up to the time of his death, and used the same and paid the taxes thereon, did not have the effect to divest his grantees of the title by him conveyed. (*Emmons* v. *Barton,* 109 Cal. 668.) In *Brown* v. *McKay,* 125 Cal. 291, the father was in possession of lands inherited by him and his sons from their mother. He used it, paid taxes on it, leased it, and did everything that an owner of property ordinarily does. Yet this court in that case says: "It is incredible that the father of these two boys, before or after their arrival at the age of majority, ever intended to obtain title from them by adverse possession. Hostile intent of the party in possession is all-important in such a case." In *Reed* v. *Smith,* 125 Cal. 491, it appears that the father of the defendant executed a deed to her as his daughter, and that after the delivery of the same it was kept in the usual manner among papers belonging to both father and daughter, which were subsequently placed together in her valise; that the father some years thereafter, through opposition to his daughter's marriage, demanded the deed back, and she could not at that time find it. In addition to having demanded the deed back, as stated, the father remained in possession of the premises, and exercised all the acts of an owner in reference to the same. Yet this court held that these acts did not constitute an adverse holding prior to the time when he assumed hostility to the title. In the case at bar there is no evidence or pretense that Tully ever assumed hostility to the title of the defendants. On the contrary, it

appears that one of his last acts was the execution of the so-
called deed of confirmation. It is alleged that the defendants,
grantees in said deed, possessed great influence and exercised
control over the mind and acts of said John Tully, and that
at the date of the said confirmation deed he was feeble in body
and mind from physical disease. But it appears that this
confirmation deed was executed only about three weeks after
the deed to the plaintiff Sarah G. Tully, and he was likely in
the same condition of body and mind at that time as when
the confirmation deed was executed. And, in fact, the aver-
ments of the complaint would seem to show that, and that it
required some pressure and influence on the part of the plain-
tiff to obtain the same; for it is alleged that it was made in
pursuance of an agreement on the part of Tully before the
remarriage, and that he had during said period of over eight
years frequently promised to fulfill said agreement, but had
failed to do so up to within about two months of his death.
The defendants in receiving this latter deed are not estopped
from claiming title under the first conveyance. (*San Francisco*
v. *Lawton*, 18 Cal. 476;[1] *Wenzel* v. *Shultz*, 100 Cal. 255; *Rob-
inson* v. *Thornton*, 102 Cal. 684; Bigelow on Estoppel, sec.
357.) At the time of the alleged promise of John Tully to
convey the one-third interest to plaintiff Sarah G. Tully, and
also at the time of the execution of the deed to her, the title
to the property, as already shown, was vested in the defend-
ants, his children, subject only to a lien on one tract to secure
the payment of her alimony; and when she remarried the
right to alimony ceased, and the lien to secure the same was
thereby discharged. And at this time she had full notice
and knowledge of all the facts and circumstances connected
with the transaction, as well as being well acquainted with the
habits and character of said John Tully. Whatever he might
say or do after the conveyance to his children, the defendants,
could not affect the title of said grantees. There clearly was
no express trust, because there is no pretense that there was
any writing creating a trust, and from the facts and circum-
stances as shown there was no constructive or implied trust.
They occupied the position simply of grantees from a father
to his children, and had a right to stand upon the title con-
veyed.

[1] 79 Am. Dec. 187.

2. The action would seem to be barred by the statute of limitations. As already shown, John Tully had neither legal nor equitable title after his conveyance to his children, and there is no trust relation so as to save the operation of the statute of limitations. (*Nougues* v. *Newlands,* 118 Cal. 102; *Broder* v. *Conklin,* 121 Cal. 286.) And if fraud were relied upon as the basis of the action, more than three years had elapsed after all the transactions had taken place and were known to the plaintiffs. The deed to Mrs. Tully was September 20, 1894, and the complaint on which the judgment was rendered, as well as the second amended complaint, were filed December, 1898. (Code Civ. Proc., sec. 338; *Anderson* v. *Myers,* 50 Cal. 525; *Meeks* v. *Southern Pacific R. R. Co.,* 61 Cal. 149; *Peiser* v. *Griffin,* 125 Cal. 9.)

The demurrer to the complaint was properly sustained.
The judgment is affirmed.

Harrison, J., and Garoutte, J., concurred.