[Civ. No. 3398. First Appellate District, Division One.—September 1, 1920.]

IRENE M. McGEHEE et al., Appellants, v. JOHN J. CURRAN, as Executor, etc., et al., Respondents.

[1] JUDGMENTS—EXTRINSIC FRAUD—RELIEF.—While a former judgment or decree may be set aside and annulled for some frauds, it must be a fraud extrinsic or collateral to the questions examined and determined in the action.

[2] ID.—FINALITY OF JUDGMENTS.—When parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court had been imposed upon, or that the prevailing party has prevented a fair submission of the controversy.

[3] ID.—ACTION TO VACATE JUDGMENT—INTRINSIC FRAUD. — A judgment in an action to quiet title cannot be set aside after the lapse of several years, where, according to the averments of the complaint to set aside the judgment, the fraud which prevented a fair submission of the controversy lay in the fact that in the trial of the action to quiet title, the prevailing parties falsely asserted that the deeds under which they claimed the property were intended as absolute conveyances and were not given or re-

ceived upon any trust, there being no allegation that the prevailing parties prevented the adverse parties from controverting in every way available to them the alleged false. claim and testimony.

[4] Id. — False Testimony — Validity of Judgment. — A judgment had after a trial of controverted issues of fact will not be reopened on a claim that the issues were erroneously determined because of false or even perjured testimony.

[5] Id.—Setting Aside of Judgment—Extrinsic Fraud—Equity.— Before a court of equity can set aside a judgment for extrinsic fraud, it must be made to appear with reasonable certainty that the judgment was wrong, or that the result would have been different upon another trial.

[6] Id.—Fraud—Prevention of Appeal and Motion for New Trial —Validity of Judgment.—A judgment is not affected by a fraud which prevented the losing parties from appealing or moving for a new trial, in the absence of a showing that the appeal or the motion would have been successful. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Santa Clara County. W. A. Beasly, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Tully and D. T. Jenkins for Appellants.

Leib & Leib, L. B. Archer and C. M. Cassin for Respondents.

WASTE, P. J.—This is an action brought by the plaintiffs, after a lapse of over twelve years, to set aside and vacate a judgment, rendered in 1905, in an action to quiet title, wherein the defendants here were the plaintiffs and these plaintiffs were the defendants. Plaintiffs also seek to establish a constructive trust in the land in their favor. It is the contention of the appellants that they did not have a just and fair trial in that action, because of the suppression of facts, and because of fraud and collusion on the part of the defendants here and the attorneys for, and guardian *ad litem* of four of these plaintiffs, who were then minors. Demurrer to the second amended complaint was sustained, and the plaintiffs declining to amend, judgment was entered in favor of the defendants, from which the appeal is taken.

As the litigation, of which this action is but a part, had its inception thirty-five years ago, it is necessary for us to indulge in a somewhat extended narration of the facts which are set out in the amended complaint. In 1884 Sarah G. Tully, who is the mother of the other plaintiffs, married John Tully, a widower now deceased, and the father of defendants Mary E. Wineland, Isabella Higgins, Dorinda Tully Curran, Eleanor Tully, Joseph Tully, and Edward O. Tully. Defendant J. W. Wineland is the husband of Mary E. Wineland, defendant Maurice Higgins is the husband of Isabella Higgins, and defendant J. J. Curran is the surviving husband of Dorinda Tully Curran, now deceased, and the executor of her estate. In speaking of "the defendants" hereafter, we will refer to the said children of John Tully. On July 29, 1885, the said Sarah G. Tully instituted an action for divorce against her husband. A few days later he conveyed all his property, consisting of several tracts of land, and some of his personal property to his children, these defendants. Thereupon Sarah G. Tully amended her complaint and made the grantees in said conveyances parties defendant in the divorce action. Upon the trial being had the court granted Mrs. Tully a decree of divorce and awarded her the custody of an infant child. The court also decreed that the conveyances from Tully to the children of his former marriage were fraudulent, inoperative, and void as to any interest or claim of his wife therein or thereto. He was ordered to pay to her the sum of fifty dollars per month for the support and maintenance of herself and the child, and the payment thereof, and of any other sum which might thereafter be awarded instead, was secured by and declared to be a lien upon a part of the land covered by the deeds.

The parties to the divorce action settled their differences, and immediately after the filing and entry of the decree of divorce Tully and his wife entered into an agreement, whereby Tully promised and agreed with Mrs. Tully that if she would remarry him, and would forego and release him and the lands he had conveyed to his children from the lien, and the payment of permanent alimony for the support of herself and the child, he would convey to her an undivided one-third interest in all of the lands theretofore deeded to these defendants. The parties thereupon

remarried and lived together until John Tully died, November 26, 1894. Three more children were born to them. It was not until September 20, 1894, however, and just before his death, that John Tully, in part fulfillment of his marriage contract, executed and delivered to Mrs. Tully a grant, bargain, and sale deed for one undivided third interest in the land. A few days later, on October 12, 1894, Tully made and delivered to his children by the former marriage another deed of the same property he had conveyed to them in 1885, excepting a portion sold. This conveyance was executed in consideration of love and affection, and for the better maintenance, support, and protection of the grantees, and granted and confirmed the land to them. From and after the death of John Tully the plaintiffs and defendants remained in joint possession of the property until August, 1905. The defendants assumed management and control thereof, and provided and cared for Mrs. Tully and her four minor children for about two years. During these years, so it is alleged, the defendants and Sarah G. Tully negotiated and consulted with a view to ascertaining what she would consider to be a fair share for herself and the minors in a division of the property. On December 5, 1896, Mrs. Tully instituted an action in ejectment, in her own behalf, against the grantees of John Tully, to recover her one-third interest in the lands. The grantees filed their answer in which they asserted themselves to be the owners of the land, and denied any ownership in Mrs. Tully. The trial court held that the plaintiff therein could not prove the invalidity of the deeds from John Tully to the defendants, or that said defendants held said land in trust for plaintiff. It admitted the deeds in evidence and gave its judgment against Sarah G. Tully, and in favor of the defendants. Claiming that the defendants were threatening to dispossess her under that judgment, Mrs. Tully immediately instituted another action against the same defendants, and in which the minor children were plaintiffs, by their guardian *ad litem*, H. V. Morehouse. The third amended complaint in that action is attached to and made a part of the amended complaint in this present suit. In addition to specific allegations of the facts we have narrated, it is therein averred that John Tully remained in the possession and control of the land, set forth

in the deeds of conveyance to the defendants, up to the time of his death, claiming the same as his own, cultivating said land, and paying the taxes thereon. As the gravamen of the action it is alleged that the deed, made by John Tully to the defendants in 1885, was executed for the purpose of defeating Mrs. Tully in the divorce action, and in the assertion of her rights to maintenance for herself and offspring, and was not made in good faith, and was in fraud of creditors of whom Mrs. Tully was one by reason of her alimony allowance. It was further alleged in that action that the second deed from John Tully to the defendants, executed in 1894, was procured by the defendants by false and fraudulent representations, at a time when said Tully was feeble in body and mind from physical disease, and for the purpose of defeating all rights and claims of the plaintiffs, and the effect of the deed of the one-third interest made by John Tully to Mrs. Tully, and also to defeat the claims which the minor children would have in the estate of John Tully, in case he should die intestate. The prayer of the complaint was that it be adjudged that the defendants, who are the defendants herein, had since the first day of August, 1885, held the land in trust for Sarah G. Tully and her minor children, who are the plaintiffs here, that Sarah G. Tully be adjudged to be the owner of an undivided one-third part, and the minor chidren of the plaintiff and John Tully, the other plaintiffs here, be adjudged to be the owner of an undivided four-tenths of the remaining two-thirds.

Demurrer to the third amended complaint in that action was sustained, the plaintiffs declined to further amend, and judgment was entered in favor of the defendants. While it does not so appear from the averments of the amended complaint in the present action, it is a matter of record to which both appellants and respondents have referred in their briefs and arguments, that on appeal the judgment was affirmed upon two grounds: 1. That the facts stated in the complaint did not state a cause of action; and 2. That the action was barred by the statute of limitations. The court held on the facts pleaded, which were those we have here set out, that John Tully had neither legal nor equitable title after his conveyance to his children in 1885, and that there was no trust relation to save the operation

of the statute of limitations.   (*Tully* v. *Tully*, 137 Cal. 60, 68, [69 Pac. 700].)

Matters appear to have remained *in status quo* until January 2, 1904, when these defendants instituted an action against these plaintiffs, Sarah G. Tully and her children, who were still minors, to quiet title to all of the property conveyed by the John Tully deeds, excepting the portion theretofore sold.   The plaintiffs appeared in the action, the minors being at all times represented by F. J. Hambly, their duly appointed guardian *ad litem*.   Judgment was rendered in favor of the plaintiffs in that action, the defendants here. It is that judgment that the plaintiffs, all of them being now of legal age, are seeking to have vacated and set aside. They also seek to have a trust in favor of plaintiffs impressed upon the property conveyed by John Tully to the defendants, and pray for interest upon the rental value of the shares to which they claim to be entitled under the trust.

As the basis of the present action begun twelve years after the entry of the judgment, the plaintiffs allege that they did not have a just or fair trial in the suit to quiet title, because of the fraud of the defendants in suppressing facts which would have established the rights of the plaintiffs, and because of collusion on the part of the defendants and the guardian *ad litem* of the plaintiffs who were minors at the time.   In support of their position the plaintiffs now allege that on August 1, 1885, the defendants induced John Tully to convey his property to themselves, by a deed absolute in form, "upon the express oral agreement with the said John Tully that they and each of them would hold the said property in trust for the use and benefit of him, the said John Tully, and would permit him to remain in possession and take the rent, issues and profits of said property as he had always done theretofore, and would convey to said John Tully, or to whomsoever he might direct, the whole or any portion of the same."   It is alleged that the second or confirmation deed of John Tully to the defendants, made on October 12, 1894, was executed without consideration, and was executed by John Tully, and accepted by the defendants, upon the express oral agreement that the defendants would convey to Sarah G. Tully the legal title to an undivided one-third equitable interest in said property, and that

they would hold the remainder of said property in trust for the use and benefit of themselves, the said defendants, and for the use and benefit of the then four minor children.

It is these alleged facts which the plaintiffs now charge were suppressed by the defendants in the trial of the quiet title suit, the averment being, that in that action "the said plaintiffs endeavored to defend themselves against said suit to quiet title upon every available ground then known to them; that the defense that said property was held in trust as heretofore set forth was rendered unavailable to said plaintiffs and no fair submission of said defense was had for the reason that the defendants fraudulently suppressed the facts of the existence of said trust and agreements by remaining silent and refusing to disclose to the plaintiffs, their *cestui*, either the rights of the plaintiffs in said property or the facts to prove the existence of said rights; that the said Sarah G. Tully, for the purpose of discovering the true manner in which said defendants held the said property, caused the depositions to be taken of Joseph Tully, Edward O. Tully, and Isabella Higgins, defendants hereto, and said defendants asserted in said depositions that they were the absolute owners of said property, and refused to disclose anything with reference to the rights of said plaintiffs; that at the trial of said suit to quiet title, the said defendants asserted that they were the absolute owners of said property and refused to disclose the rights of the plaintiffs, their *cestui*; that said plaintiffs exhausted every available means to ascertain the facts and secure the evidence in regard to the manner in which the said defendants held the said property . . . that said facts of the existence of said trusts and of the evidence to prove them lay peculiarly within the minds of said defendants for the reason that said defendants were the only parties present from whom the plaintiffs could obtain the information except John Tully, who was at that time dead; that the plaintiffs did not have a just or fair trial in said suit to quiet title because of the said suppression of the facts of the existence of their rights by said defendants, their trustees, and because of the fraud of said defendants and the guardian *ad litem* of said minor plaintiffs as hereinafter set forth."

As the basis of the fraud and collusion on the part of the defendants, and the guardian *ad litem,* and attorneys for

the minors, it is alleged that before the judgment in the said suit to quiet title had become final, and while the motion for a new trial in said suit was still pending and the time for appeal still available, the said defendants, aided and assisted by their attorneys, conspired with the said guardian *ad litem* and the attorneys of said minor plaintiffs, J. E. Alexander and H. V. Morehouse, to defraud the plaintiffs and to deprive them of their right to their motion for a new trial and their right to appeal; that said guardian *ad litem* and the attorneys of said minors entered into an agreement with said defendants, acting through their attorneys, wherein the said guardian *ad litem* and the attorneys of said minors in consideration of the sum of $750 to be paid to said guardian *ad. litem* and the attorneys of said minors by said defendants, agreed to abandon the defense of said then minor plaintiffs and to procure a written agreement providing for the removal of the plaintiffs from the property, and a release of all the rights of Sarah G. Tully in said property, upon a payment to said then minor plaintiffs, John J. Tully, Jennie G. Tully, Irene M. Tully, and Wilford H. Tully, of the sum of fifteen thousand dollars ($15,000), either in the form of a portion of said property or in money, and also providing for the dismissal of a suit between the administrator of the estate of John Tully, and said defendants, then pending, involving certain personal property. This agreement, duly executed by all parties, was carried out. The $750 was paid to the guardian *ad litem,* and their attorneys. The motion for a new trial was dismissed by stipulation, and the defendants turned over to the minors $15,000 worth of property. No part of it was received by Sarah G. Tully, and she received no property or money as a consideration for her release. The terms of the agreement of settlement, which the plaintiffs now claim to be unjust and unfair to them as securing to them only a part of what they would be entitled to if the trust in their favor had been established, were not communicated to the minors, neither did they have personal knowledge of the settlement which they always supposed was made in good faith. The compromise on their behalf was not submitted to or approved by the court.

Three principal questions at once address themselves to our consideration upon the foregoing facts: 1. Was the

judgment here attacked obtained by fraud, in such manner as to entitle these plaintiffs to the intervention of a court of equity to set it aside? 2. Was the compromise agreement, entered into by the parties after the rendition of the judgment, fraudulently procured? 3. Would the plaintiffs be in a more favorable position had it not been executed? Upon the answers to these questions depends the correct solution of this case.

[1] That a former judgment, or decree, may be set aside and annulled for some frauds, there can be no question; but it must be a fraud extrinsic, or collateral to the questions examined and determined in the action. [2] When parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party has prevented a fair submission of the controversy. (*Pico* v. *Cohn*, 91 Cal. 129, 133, [25 Am. St. Rep. 159, 13 L. R. A. 336, 27 Pac. 537]; *Steen* v. *March*, 132 Cal. 616, 618, [64 Pac. 994]; *Bacon* v. *Bacon*, 150 Cal. 477, 490, 491, [89 Pac. 317].) [3] According to the averments of plaintiffs the fraud which prevented a fair submission of their controversy lay in the fact that at the trial of the suit to quiet title, the defendants "asserted that they were the absolute owners of said property and refused to disclose the rights of the plaintiffs." The plaintiffs were not prevented by any fraudulent contrivance of the defendants from having a trial. That was their opportunity for presenting the whole matter of their alleged interest in the lands to the court for determination. In the absence of any showing to the contrary, it will be assumed that the controversy was fairly submitted. The plaintiffs did not make the judgment-roll, or any part of the evidence taken and received in the court below, a part of their complaint. We do not know what transpired there, beyond the fact that a judgment was rendered in favor of these defendants. In what manner or form the defendants asserted that they were the absolute owners of the property and under what circumstances they refused to disclose the rights of the plaintiffs is not made to appear.

Consequently, there is nothing in the record, so far as it relates to the trial, from which it may be inferred that the judgment was procured by means of an extrinsic fraud, or that it would have been different or more favorable to the plaintiffs but for the conduct of the defendants. Even though it should appear that the defendants went so far as to give perjured testimony in establishing their title to the property, and in defeating the claims of the plaintiffs, the fraud was intrinsic, and would not avail the plaintiffs to set aside the judgment. [4] "In this state it is the settled law that a judgment cannot be set aside because it is predicated upon perjured testimony, or because material evidence is concealed or suppressed." (*People* v. *Mooney,* 178 Cal. 525, 530, [174 Pac. 325]; *Allen* v. *Currey,* 41 Cal. 319, 321; *Pico* v. *Cohn, supra.*)

If, as alleged, but not so clearly as to be established, the guardian *ad litem,* and the attorneys for the minors, corruptly sold out their clients' interests, and through fraud, and collusion with the defendants, conspired to defraud the plaintiffs and did deprive them of their right to a new trial, and to an appeal in the quiet title action, to their prejudice, such conduct amounted to extrinsic fraud. (*Pico* v. *Cohn, supra; Rountree* v. *Montague,* 30 Cal. App. 170, 181, [157 Pac. 623].) [5] But even in that case, before a court of equity can set aside the judgment it must be made to appear with reasonable certainty that the judgment was wrong, or that the result would have been different upon another trial. (*Davis* v. *Chalfant,* 81 Cal. 627, 630, [22 Pac. 972]; *Painter* v. *J. B. Painter Co.,* 133 Cal. 129, 131, [65 Pac. 311].) In the instant case it does not appear that the result would have been different had the plaintiffs pressed their motion for a new trial, or, in the event of its being denied, had appealed to the higher court. It was incumbent upon the plaintiffs not only to show by their complaint the facts constituting the fraud which they contend gives them the right to set aside this judgment, but they were required also to show that they have a defense to the original action upon the merits, and that they are able to present to the court the evidence constituting that defense. They were required to not merely allege these matters as ultimate facts, but the facts themselves—those constituting the fraud, those constituting the defense, and those consti-

tuting their ability to present them to the court—should appear in the complaint, in order that the court may determine that if the allegations had been admitted by the other parties the plaintiffs would have been entitled to a judgment in their favor in the original action. (*Bell* v. *Thompson,* 147 Cal. 689, 693, 694, [82 Pac. 327], and cases cited.) In the absence of the judgment-roll, and evidence, in the action to quiet title, we have no means of ascertaining if there was any error in the trial of the case, that might have availed the plaintiffs on their motion for a new trial, or on appeal. It is not alleged in the complaint that the plaintiffs could or would have presented any newly discovered evidence to the court upon that occasion. On the contrary, it very definitely appears that they would not and could not have done so. The allegation is that "the plaintiffs endeavored to defend themselves against said suit to quiet title upon every ground then known to them." The facts constituting the defense now suggested, "that the property was held in trust," were not known to the plaintiffs until many years after the rendition of the judgment. Consequently, those facts could not have been available in support of their motion.

Even if the plaintiffs had possessed the knowledge of the facts they now assert, we are of the opinion that the result of a new trial, if one had been granted, would not have been different, any more than if the action were to be now tried anew. As tending to show that they have a defense to the original action upon the merits, and that they are able to present to the court the evidence constituting that defense, the plaintiffs allege the facts constituting the discovery of the purported fraud and the evidentiary matters relied upon to establish it. In 1917, twelve years after the date of the judgment, one of them, since arrived at maturity, had a conversation with the attorney, who, back in 1894, drafted the deed from John Tully to Sarah G. Tully, and was by him informed that shortly after said deed had been executed, one of the defendants, Isabella Higgins, called at his office and in conversation had approved of the making of the deed, and during no time in said conversation regarding the deeding of said property did she lay claim to said property, either on behalf of herself or the other defendants, nor did she assert or declare

that her father was not the owner of said property and
entitled to convey the same, but she stated that she was an
heir of said John Tully and so interested in his estate.
Plaintiffs also learned in 1916 that a purchaser of part of
the land paid the money in said transaction to John Tully,
and that he and his four adult children signed the deed,
but while due returns of sale of the interest of his two
minor children were made to the court, "no pretense ap-
pears in said record to have been made to account to said
two defendants by said guardian or otherwise." In 1917
the same plaintiff learned from one William Wehner that
said Wehner was present at a family council shortly before
John Tully died, at which the latter, the plaintiff Sarah
G. Tully, and the defendants were present. Wehner in-
formed this plaintiff that during the conference he asked
John Tully, in the presence of the defendants, if he did
not understand at the time the deed of August 1, 1885,
was made, the property set out in the deed was to be deeded
back to him at any time he saw fit to demand it; that John
Tully said he so understood it, and none of the defendants
questioned, or denied the truth of the statement. As Mrs.
Sarah G. Tully was present at that time, all of that infor-
mation was in the possession of that plaintiff at least, at
all times after the occurrence, and could have been, and we
think it safe to assume was, no doubt, used whenever it was
considered of value, or material, in this long drawn out
litigation. There is no allegation that John Tully ever de-
manded a reconveyance of the property. In 1917, Mrs.
Nettie Shaafe, one of the former employees on the Tully
property, informed the same plaintiff that John Tully,
shortly before his death, informed her that he had deeded
one-third of his property to Sarah G. Tully, and had given
the balance, share and share alike, to his children. Other
facts relied upon by the plaintiffs are that Sarah G. Tully,
one of the plaintiffs, has informed her coplaintiffs that
after the death of John Tully, Isabella Higgins, one of the
defendants, said she hoped the said Sarah G. Tully would
get "her share," presumably of Tully's property, and that
upon another occasion, Joseph Tully, another of the de-
fendants, "asked her what portions of the property she
would take for herself and children, and she informed him
what she wanted." What that portion was, however, is

not made to appear. Many evidentiary facts are pleaded to support the allegation that John Tully remained in possession of the lands, paying all charges, collecting all the revenues, and generally exercising rights of ownership over the property until he died.

The foregoing allegations, if admitted or proved, would not establish an express trust in the defendants in favor of either John Tully or the plaintiffs. That precise point was, in effect, decided upon the appeal in the former action between the same parties. There is no pretense that there was any writing creating such trust, and without it none could exist. (*Tully* v. *Tully*, 137 Cal. 60, 67, [69 Pac. 700]; *Smith* v. *Mason*, 122 Cal. 426, 427, [55 Pac. 143]; *Sheehan* v. *Sullivan*, 126 Cal. 189, 192, [58 Pac. 543]; Civ. Code, sec. 852; Code Civ. Proc., sec. 1971.) As the land was conveyed by an absolute deed, no express trust in favor of the grantor can be raised by proof of a parol agreement by the grantee to hold the property in trust or reconvey it. (*Barr* v. *O'Donnell*, 76 Cal. 469, 471, [9 Am. St. Rep. 242, 18 Pac. 429].)

If the evidence pleaded be relied upon by the plaintiffs as proof of a parol promise, which is unenforceable because of the statute of frauds, and which the defendants decline to recognize,—in other words, to show a resulting trust,—it does not have that effect. It is attempted to be pleaded, and parenthetically appears, that certain oral agreements were entered into between John Tully and these defendants, which formed the consideration for the deeds, and the repudiation of which constitutes the constructive fraud upon which the alleged trust arises. (*Lauricella* v. *Lauricella*, 161 Cal. 61, 65, [118 Pac. 430]; *Cooney* v. *Glynn*, 157 Cal. 583, 587, [108 Pac. 506].) The evidence disclosed by the averments of the complaint is not sufficient to warrant the court in finding that the deeds, which on their face are absolute conveyances of the lands in fee simple, were intended to be something else, namely, conveyances in trust. The authorities are uniform to the point that, to justify a court in determining from oral testimony that such a deed was intended to be something different, as, for instance, a trust, the testimony must be clear, convincing, and conclusive. The rule is so well stated in *Sheehan* v. *Sullivan*, 126 Cal. 189, 192–196, [58 Pac. 543], that we refer to that decision for a full discus-

sion of the point and its application to the facts of the case at bar. The evidence relied upon by the appellants does not have sufficient compelling force to establish a resulting trust in the defendants in the present action. No evidence is pleaded from which it can even be inferred that at the time the conveyances from John Tully to the defendants were executed, there was any declaration or expression of any kind by the grantor, or the grantees, that the deeds were intended to be anything else than what they purport on their face to be. The only evidence pleaded, even tending to have that effect, that of Wehner, was a declaration of the grantor made long after the execution of the deeds, which was not admissible in evidence. Whatever John Tully might say or do after the conveyance to his children, these defendants, could not affect their title as grantees. It was so held on the first appeal. (*Tully* v. *Tully,* 137 Cal. 60, 67, [69 Pac. 700]; *Smith* v. *Mason,* 122 Cal. 426, [55 Pac. 143]; *Bollinger* v. *Bollinger,* 154 Cal. 695, 705, [99 Pac. 196].) The declarations of some of the grantees, the evidence of which is supplied by one of the plaintiffs, occurring after the execution of the deeds, and the death of John Tully, are not competent for the purpose of proving the trust, and would be admissible only in corroboration of other evidence. Under any view, they would seem to be of little consequence. (*Sheehan* v. *Sullivan, supra.*) The fact that John Tully remained in possession of the premises up to the time of his death, and used the same, and paid taxes and insurance thereon, did not have the effect of divesting his grantees of the title by him conveyed. (*Tully* v. *Tully,* 137 Cal. 60, 66, [69 Pac. 700]; *Emmons* v. *Barton,* 109 Cal. 662, [42 Pac. 303]; *Brown* v. *McKay,* 125 Cal. 291, [57 Pac. 1001]; *Reed* v. *Smith,* 125 Cal. 491, [58 Pac. 139].)

From this review of the law and the facts we are of the opinion that the demurrer to the second amended complaint was properly sustained. In one of the concluding allegations of their complaint, the appellants say they ''have other evidence of the said trusts and fraud that they will offer at the trial of the case.'' But such averment does not assist the court in arriving at a correct determination of the matter. (*Bell* v. *Thompson, supra.*) Appellants argue that this is not a suit to set aside a judgment upon the ground that it was secured by perjured testimony, but is an action for

relief upon the ground of fraud for breach of duty by trustees. Even so, the effect of a recovery would be the same, and, as we have attempted to show, they were not entitled to relief upon either theory. No trust has been proved, the repudiation of which raised a cause of action in the plaintiffs' favor. The purported fraud in procuring the judgment was intrinsic. The alleged unfair and unjust compromise agreement resulted in no prejudice to the appellants.

Before leaving that subject we pause to say that, in our opinion, it has not been established that the guardian *ad litem* of certain of the minors, or their attorneys, corruptly, or at all, entered into a collusive agreement with the defendants, through their attorneys, for an unrighteous or unconscionable abandonment of the defense of those plaintiffs in the quiet title action. The litigation was at that time already stale. Upon two separate occasions, following the death of John Tully, the codefendant of the minors, their mother, had unsuccessfully assailed the title by which the grantees of John Tully claimed to be the absolute owners of the land. In one of the actions, in which the minors were parties plaintiff with their mother, an effort had been made to have it determined that such plaintiffs were part owners of the property. After what would appear to be ample opportunity for the proper presentation of every claim they might have (for the demurrer sustained was to the third amended complaint), the plaintiffs had allowed judgment to be taken against them, and affirmed upon appeal to the supreme court. (*Tully* v. *Tully, supra.*) It had there been held, on the facts presented, that the first deed of John Tully to his children, the defendants there and here, passed title to them, and that such title had continued to remain in the grantees. We have not before us the record of that case other than the complaint, but three points appear to have been urged by the plaintiffs in support of their claim,— the invalidity of the conveyance to the defendants, title by adverse possession in John Tully, and a resulting trust in these defendants. We may safely assume such facts, for the supreme court passed upon those questions and decided each against the contentions of the plaintiffs. After elaborate preparations for presenting their defense to the quiet title action, brought against them by these defendants, judgment

had again been given against the plaintiffs and confirming the title of these defendants. When the motion for a new trial was pending, no newly discovered evidence or other facts were at the command of the guardian *ad litem* or the attorneys for the plaintiffs. Under such circumstances it was incumbent upon them to use their best endeavors in the interests of their wards and clients. If in the exercise of their honest and best judgment the compromise effected was the best they could do, they were justified in entering into the agreement. Under such circumstances, the efforts of the guardian *ad litem* and the attorneys did not constitute fraud, and would not entitle the minors to set aside the judgment. (*Collins* v. *Scott*, 100 Cal. 446, 452, [34 Pac. 1085].) The other plaintiff, Sarah G. Tully, was *sui juris*, and was represented by counsel. She had full knowledge of all the facts and signed the agreement. She cannot now be heard to complain. The payment by the defendants of the sum of $750 to the guardian *ad litem* and the attorneys for the plaintiffs appears from the allegations of the complaint to have been a part of the settlement, and was well understood by all the parties. Aside from certain conclusions of the pleader, there is nothing in the record to establish fraud on the part of those so directly assailed. The action was apparently settled in good faith.

We think it unnecessary to devote further consideration to the many points raised by the parties on the submission of this case. For the reason, which we deem readily apparent from what we have already said, the litigation should have an end. No sufficient ground has been suggested in the second amended complaint why it should be prolonged. Further discussion would involve questions which are merely corollary to the main issue, many of which become of material importance only when considered from a viewpoint differing from that which we have reached.

The judgment is affirmed.

Richards, J., and Welch, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 28, 1920, and the following opinion then rendered thereon:

THE COURT.—We agree with the conclusion reached by the district court of appeal, but there are matters stated in its opinion as to which we have some doubt and from which we prefer to withhold approval. With the general line of reasoning of the opinion we agree. The essential point of the case is that in 1905 the defendants in the present action secured a judgment against plaintiffs quieting their title to the property involved, and this judgment is conclusive upon the plaintiffs unless their complaint alleges such fraud in obtaining the judgment as will warrant setting it aside. The only fraud in the obtaining of that judgment which the complaint alleges is that the plaintiffs there, defendants here, falsely claimed and testified that the deeds from their father, under which they claim, were intended as absolute conveyances, and were not given or received upon any trust. There is no allegation that the plaintiffs in that action prevented the defendants, or those acting for them, from controverting in every way available to them the claim and testimony of the plaintiffs that the property had been conveyed to them as absolute owners. The allegation of the complaint is, indeed, that every effort was made on behalf of the then defendants to secure evidence of the trust upon which it is now claimed the deeds were executed, but that such endeavors failed. The new matter which it is alleged the now plaintiffs have since discovered is but evidence which they claim is sufficient to show that the testimony of their adversaries given in the former action was false. This is nothing more than an allegation that the former judgment was obtained by false testimony. But the rule is thoroughly established that a judgment had after a trial of controverted issues of fact will not be reopened on a claim that the issues were erroneously determined because of false or even perjured testimony. The false or genuine character of the testimony was intrinsic to the trial in the course of which it was presented, and a judgment based upon the conclusion then made that it was genuine is final, and cannot be reopened to permit of a retrial of the same issues simply because of a claim that it can now be shown that such testimony was false. If the rule were otherwise, there could be no end to litigation.

[6]  The complaint also attacks as fraudulent a settlement made between the parties after the rendition of the former

judgment, but before the expiration of the time for appeal or for motion for a new trial, whereby the plaintiffs were prevented from appealing or moving for a new trial. We may assume that this settlement, according to the allegations of the complaint, was fraudulent and subject to be set aside, although even that is hardly certain, giving full value to the allegations. But even assuming this, such fraud does not touch the judgment, and unless the judgment can be overthrown the plaintiffs have no cause of action. The only effect which the alleged fraudulent settlement is claimed to have had upon the former litigation is that it prevented an appeal or a motion for a new trial. But there is nothing whatever alleged in the complaint showing that an appeal or motion for a new trial could or would have been successful. In fact, it is a fair inference from the complaint that they would not have been, since the only ground on which the judgment is now attacked is that it was given on false testimony, and the evidence which it is now claimed shows the testimony to have been false was not known at the time and could not have been produced. If the judgment could not have been reversed or set aside on appeal or by motion for a new trial, it is evident that any fraudulent settlement by which the present plaintiffs were prevented from appealing or moving for a new trial did not injure them, did not touch the judgment itself, and is wholly immaterial.

What we have said is substantially said in the opinion of the district court of appeal, and sufficiently disposes of the case. As to all other matters discussed in the opinion we withhold approval.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Sloane, J., who were absent.