[S. F. No. 917.  In Bank.—September 23, 1899.]

ELLEN SHEEHAN, Respondent, v. MARGARET SULLI-VAN et al., Defendants.  ROBERT P. SULLIVAN et al., Appellants.

TRUST—CONVEYANCE FROM HUSBAND TO WIFE—ACTION BY HEIR—INSUF-FICIENT FINDINGS. — In an action by an heir, in the interest of himself and coheirs made defendants, to enforce a trust in real and personal property conveyed by a deceased husband to his wife, by deed absolute in form, a finding that the transfer was made by the decedent when in failing health under an agree-ment with the wife "to take and hold the same in trust for her said husband, and not otherwise," followed by a finding of law "that, after his death, she continued to hold, and now holds, the said real and personal property in trust for the heirs," are not sufficient, treating the finding of law as one of fact, to establish a declaration of trust in favor of the heirs, or to sustain a de-cree enforcing a trust in their favor in such action.

ID.—TRUST IN FAVOR OF HEIRS—UNCERTAINTY—OMISSIONS IN FINDING.— The finding of a trust in favor of the heirs is too uncertain, in-definite, and vague to be enforced, and fails to find as to the duration of the estate of the trustee, as to the nature and quantity of the interests of the alleged beneficiaries, as to what duties were imposed upon the trustee, and as to the manner of the execution of the alleged trust.

ID.—TRUST AS TO LAND—WRITTEN INSTRUMENT—OPERATION OF LAW.—A trust as to land cannot be established except by a written instrument, or by operation of law; and where the deed is an absolute conveyance, without any written condition or limita-tion, or declaration of trust, and there is no finding that the wife obtained the property by fraud, accident, mistake, or un-due influence, or any other wrongful act, or of any facts which would constitute her an involuntary trustee, or a trustee by operation of law, no trust as to the land is established.

ID.—CONVEYANCE FROM HUSBAND TO WIFE—PRESUMPTION.—In the ab-sence of any proof of fraud or undue influence, no presumption arises from the mere fact of a deed from the husband to the wife that it was procured by fraud or undue influence.

ID.—PAROL AGREEMENT OF TRUST—DEGREE OF PROOF REQUIRED—INSUF-FICIENCY OF EVIDENCE.—A parol agreement of trust under which an absolute conveyance was received can only be established by clear, convincing, and conclusive evidence; and where the evidence introduced by the plaintiff fails to establish any agree-ment as to a trust, or any declaration of trust, at the time of the execution of the deed, and only shows a loose and in-definite statement previously made by the grantee, which is not sufficient to turn an absolute deed subsequently executed into

a certain and definite trust, and which was contradicted by the grantee, it is insufficient to sustain a finding that any trust was created by the deed.

ID.—FINDING AGAINST ABSOLUTE DEED—REVIEW UPON APPEAL—ENFORCE-MENT OF RULE AS TO PROOF.—Where an absolute deed has been found to be something else, the sufficiency of the evidence to support the finding should be considered by the appellate court, in the light of the rule which should govern the trial courts.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order denying a new trial. John Reynolds, Judge rendering judgment; John Reynolds and W. G. Lorigan, Judges denying new trial.

The facts are stated in the opinion of the court.

Jackson Hatch, for Appellants, and for Margaret Sullivan, Respondent.

H. V. Morehouse, F. J. Hambly, and Welch & Wilcox, for Plaintiff, Respondent.

McFARLAND, J.—This is an action to have a certain alleged trust declared and to enforce its execution. Judgment went for plaintiff, and defendants other than Margaret Sullivan appeal from the judgment and from an order denying the motion for a new trial. Margaret also appealed, but her appeal is brought here in another transcript, designated as San Francisco No. 918; and exactly the same questions arise in the two appeals.

Michael Sullivan, who died intestate November 8, 1898, was the father, and the defendant, Margaret Sullivan is the mother, of plaintiff. The other defendants, six in number, are brothers and sisters of plaintiff, except James M. Sheehan, who is a brother-in-law, and they are made defendants upon the averment that they refuse to join the plaintiff in maintaining this action. All the defendants answer, denying that plaintiff has any cause of action.

It is averred in the complaint that on September 14, 1887, the said Michael, since deceased, conveyed to his wife Margaret, plaintiff's mother and defendant herein as above stated, a certain described piece of land containing about one hundred and fourteen acres, and at about the same time transferred to her

certain personal property consisting of certificates of deposit in banks, moneys, livestock, et cetera. It is averred that Margaret solicited her husband to make the conveyance and transfer, and there are averments indicating that she used undue influence to procure the same, and violated the confidence reposed by him in her; but as the court does not find any of these averments to be true, they may be dismissed from consideration. The main averments to be considered are that the land and the personal property were conveyed and transferred by him to her "upon the express understanding and agreement between them" that she was to hold the same in trust; and the trust averred was that she was to hold the same "in trust for said Michael during his life, and after his death for the use and benefit of herself and the last-mentioned children"—being all the children except Mary .K. Sheehan—and that "within a reasonable time after his death" she would "divide and distribute two-thirds" of the property, share and share alike, to all of the children except said Mary K., and reserve to herself one-third.

Possibly, the averments of the complaint as to the disposition to be made of the property to the children after the death of Michael might be held as "indicating with reasonable certainty" the nature and purpose of the alleged trust within the meaning of section 2221 of the Civil Code (see *Wittfield v. Forster*, 124 Cal. 418); but a trust as thus averred was not found by the court. The only finding of a trust is in finding VI, wherein it is stated that at the date of the deed Michael Sullivan "was in failing health, and, in order to avoid the responsibility of caring for and managing his property, and for the better protection of the same," he executed the deed to his wife and transferred to her the personal property, "to have and hold the same by said Margaret in trust for the use and benefit of said Michael," and that she took the property in trust as aforesaid, and not absolutely or otherwise, and then "agreed to take and hold the same in trust for her said husband, and not otherwise." This is the only finding of fact as to the creation of a trust. The finding says nothing whatever about a trust for the plaintiff or the other children, which latter alleged trust is the only one of importance here. It is true that among the "conclusions of law" there is a statement that she took the property

in trust for Michael during his lifetime, and "that after his death she continued to hold and now holds said real and personal property in trust for the heirs of said Michael"; but if this, by any stretch of leniency, could be considered as a finding of fact gone astray among conclusions of law, it is too uncertain, indefinite, and vague to constitute the declaration of a trust. The duration of the estate of the trustee, the nature and quantity of the interests of the alleged beneficiaries, what duties were imposed on the trustee, what she was to do with the property, how and when she was to dispose of it, if at all, and the manner in which she should execute this supposed trust, are all left undeclared. (*Wittfield v. Forster, supra.*) Moreover, there is no finding that, as to the land, the alleged trust was created in either of the two ways in which alone a trust in relation to real property can be created, to wit, by a written instrument, or by operation of law. (Civ. Code, sec. 852.) The deed in question here is upon its face an absolute conveyance of the land from Michael to Margaret, without any hint of a trust or any condition or limitation whatever, and there is no pretense—or finding—that any other instrument in writing was ever executed, by either of said parties, referring in any way to the deed or the land; therefore, the trust contended for was not created by an instrument in writing. Neither is there any finding that Margaret got the property by fraud, accident, mistake, undue influence, or any other wrongful act by which, under section 2224 of the Civil Code, she became an involuntary trustee, nor any finding of any other facts, or fact, which would constitute her a trustee by operation of law. (See *Barr v. O'Donnell*, 76 Cal. 471; 9 Am. St. Rep. 242, and cases there cited.) No presumption that the deed was procured by fraud or undue influence arises from the mere naked fact that it was from a husband to his wife, and no fraud or undue influence is found. (*Tillaux v. Tillaux*, 115 Cal. 663.) The findings, therefore, do not warrant the judgment.

But as the case may be tried again when there may be different findings, while the evidence may or may not be the same, it is proper to say that, waiving all the questions above discussed, the evidence disclosed by the transcript on this appeal was not sufficient to warrant the court in finding that the deed,

which is on its face an absolute conveyance of the land in fee-
simple, was intended to be something else, namely, a convey-
ance in trust. The authorities are uniform to the point that to
justify a court in determining from oral testimony that a deed
which purports to convey land absolutely in fee simple was in-
tended to be something different, as a mortgage or trust, such
testimony must be clear, convincing, and conclusive—something
more than that modicum of evidence which appellate courts
sometimes hold sufficient to warrant a finding where the matter
is not so serious as the overthrow of a clearly expressed deed,
solemnly executed and delivered. Language used by different
courts in declaring how strong such evidence must be may be
seen in the notes to *Mahony v. Bostwick*, 31 Am. St. Rep. 180.
Some of the expressions there quoted are: "Must be clear, satis-
factory, and convincing"; "clear and satisfactory"; "clear and
convincing"; "very satisfactory"; "strong and convincing";
"clear, unequivocal, and convincing"; "clear, explicit and un-
equivocal"; "so clear as to leave no substantial doubt"; "suffi-
ciently strong to command the unhesitating assent of every rea-
sonable mind." In *Becker v. Howard*, 75 Wis. 422, the court said:
"To convert a deed absolute into a mortgage the evidence should
be so clear as to leave no substantial doubt that the real inten-
tion of the parties was to execute a mortgage." Similar declara-
tions on this subject have been frequently made by this court.
(See *Mahony v. Bostwick*, 96 Cal. 53; 31 Am. St. Rep. 175, and
cases there cited; *Sherman v. Sandell*, 106 Cal. 373.) In most of
these cases, the attempt was to show by parol evidence that an
absolute deed was a mortgage under a statutory provision which
expressly declares that this may be done—while there is no such
statutory provision as to a trust. While in many of the cases
cited the court below had found against the asserted mortgage
or trust and the judgment was affirmed, still they clearly de-
clare that the rule, as above stated, should govern trial courts,
and that, where an absolute deed has been found to be some-
thing else, the sufficiency of the evidence to support the finding
should be considered by the appellate court in the light of that
rule. In *Wilson v. Parshall*, 129 N. Y. 223, the court say:
"The security of titles and sound public policy require that a
party alleging that a deed absolute in form is, nevertheless, a

mortgage should show it by very satisfactory evidence, and, where he attempts to show it by oral evidence, his proof should amount to more than a mere guess or surmise, or even inferences which are just as consistent with one theory of the deed as the other." (*Fisher v. Witham*, 132 Pa. St. 488; *Coyle v. Davis*, 116 U. S. 108.) Moreover, courts have not infrequently reversed judgments declaring such deeds to be mortgages or trusts, where there was considerable evidence supporting them. In *Cake v. Shull*, 45 N. J. Eq. 208, and also in *Sanger v. Meservey*, 80 Iowa, 158, a judgment deciding a deed to be a mortgage was reversed for want of sufficient evidence; and in each of those cases the evidence in support of the finding was vastly stronger than in the case at bar.

In this case, there is no pretense of evidence that at the time the deed was executed there was any declaration or expression of any kind by the grantor, or the grantee, that it was intended to be anything else than what it purports on its face to be. The conveyancer who prepared the deed, and who was present at its execution, testified that he read it carefully to the grantor, and that the latter expressed himself as fully understanding it, and said that it was all right. Other members of the family, including the grantee herself, were present at the time of the execution of the deed, and there was no intimation by anyone at that time of a trust, or that the deed was intended to be other than it purports to be. It was acknowledged on the same day and recorded shortly afterward. None of the brothers and sisters other than plaintiff swear to anything like a trust, and one of them testifies that on the very day of the execution of the deed his father told him that he was going "to deed everything right over to her"; and the defendant Margaret—the grantee—testified to the same effect. The plaintiff introduced no evidence of any agreement as to a trust or any declaration of a trust at the time of the execution of the deed. The only evidence that can be fairly considered as tending at all to establish a trust such as is averred in the complaint is the testimony of plaintiff herself when on the witness stand, as to certain conversation, about the date of which she was very uncertain, which she says she had with her mother before the execution of the deed, and one or two other conversations with

her mother after her father's death, and, of course, long after the execution of the deed. She testified that, having heard from her husband of the contemplated deed, she asked her mother about it; and her own language as to the conversation —given by her in her testimony—is as follows: "When I went up I asked her about it, and she said she had asked him about it, and she wanted him to give a deed to her and she would take care of the property for us while he lived." A close examination of all the testimony given by plaintiff will show that her language above quoted is the sum and substance of all her mother is asserted to have said bearing in any way upon the trust here contended for; and it would be beyond all reasonable conclusion to hold that this loose and indefinite statement of the mother is sufficient to turn an absolute deed made afterward by the father into a trust sufficiently certain and definite to be declared and enforced by a court. The declarations of the grantee Margaret, testified to by the plaintiff as occurring after the execution of the deed and the death of Michael, were, of course, not competent for the purpose of proving the trust, and were admissible only in corroboration of plaintiff's witnesses; but, under any view, they were of little consequence. The plaintiff testified that, after the death of her father, "I asked her if she would give me my share, that I wanted to release my land, and she said she would rather leave it in the bank and draw interest—the bank would take better care of it; she was afraid my husband would get away with it in case she redeemed the land." Her counsel then asked her the leading question: "Did she tell you at that time that she would give you your share?" to which she answered: "Yes, sir; she promised she would give it to me and keep it for me; she would give me my share when it was divided up." She testified that on other occasions she asked her mother for her share, and that finally, a few months before the commencement of the action, her mother positively told her that she would not give her anything, and ordered her and her husband out of the house, after which she had no further communications with her mother. All this tends to show that she repudiated the alleged trust, rather than that she acknowledged it. According to the conversations testified to, it certainly appears that she

always refused to give plaintiff what the latter called her "share." All that she is asserted to have said is entirely consistent with her position that the property was all hers absolutely, to dispose of as she pleased, and that she would probably allow it to go, according to the law of descents, to the children at her death, and might possibly give a portion of it to some of the children during her life. In her testimony she denied all these conversations; but, considering them independently of her denials, they contribute nothing toward sustaining the finding here in question. The only other evidence claimed by the respondent as tending to support the finding is the testimony of plaintiff's husband as to a statement made to him by Michael some time before the execution of the deed, to the effect that some of the family wanted him to make the deed, and made certain threats if he didn't make it. This, at best, would tend only to show that the deed was procured by fraud or undue influence, but the court does not find any facts of that kind, and under all the evidence could not properly have done so. The judgment really rests upon the theory of an express agreement between the parties that the deed should be considered as a trust. This witness also testified that after the deed was made Michael told him that "they got me drunk, and I didn't know what I was doing," and that he must get it back; but there is no finding that the deed was not properly executed, or that it was procured by any artifice of this kind, or that he was in any way incompetent to make a deed. This is not an action to set aside a deed upon the ground that it was procured through fraud or undue influence, and the judgment was not rendered upon any such theory.

Our conclusion is, that the evidence was not sufficient to support the finding of a trust; the question here is not really one of conflict of evidence; the evidence introduced by plaintiff, leaving out of view the fact that it was all contradicted, is not in itself sufficient to show the declaration and creation of the trust as averred in the complaint, or as found by the court.

The judgment and order appealed from are reversed.

Garoutte, J., Harrison, J., Temple, J., Henshaw, J., Beatty, C. J., and Van Dyke, J., concurred.