[Civ. No. 6282. Third Appellate District.—May 15, 1940.]

H. C. STROMERSON et al., Respondents, v. ROGER AVERILL, Appellant.

L. N. Barber, David E. Peckinpah and Barcroft & Barcroft for Appellant.

Conley, Conley & Conley for Respondents.

LEMMON, J., *pro tem.*—This action was brought to quiet plaintiffs' title to real property. Defendant answered, denying the material allegations in the complaint. From a judgment adverse to him, defendant appeals.

Plaintiff, H. C. Stromerson, and defendant Roger Averill, had been friends for many years, the friendship beginning in 1915 or 1916 when they both resided in Idaho. In 1933 Averill was engaged in farming in Madera County. He persuaded or encouraged Stromerson to come from Los Angeles, where he then lived, to Madera for the purpose of farming the real property here in dispute. The evidence is in sharp conflict as to whether the property was purchased in the name of Stromerson under circumstances from which the conclusion is to be drawn that title is held by Stromerson in trust for Averill or that Averill's participation in the financing of the purchase and the farming of the property was purely gratuitous and an expression of the friendship between the two.

The real property was purchased under a contract dated November 1, 1933, in which Stromerson is the purchaser, and

Miller & Lux Incorporated, is the seller. According to Stromerson, Averill wanted him to come to Madera, and stated, "he had a piece of land that he could buy for me, that he had all of the land that he wanted and was not in a position to buy this place." The initial or down payment was borrowed by Averill from the San Joaquin Cotton Oil Co., and was charged by that company to Averill. Averill was reported as having stated at the time the contract was being negotiated the land was being bought for a "friend". Upon the contract is endorsed an assignment thereof, the name of the assignee not being filled in. This assignment bears Stromerson's signature. This phase of the transaction is explained as a compliance with the requirement of the lender as a condition to the financing of the purchase. The contract so assigned was deposited with and kept by that company as security. The same company financed the operations on the farm for that and the succeeding years. Some of the applications for loans were made by Stromerson, and some by Averill, but Averill's guarantee was required in each instance. Early in 1934, the company charged Stromerson's account with all advances previously charged to Averill's account and credited Averill's account with the total of those advances. At the end of that year's season, the proceeds from the year's operations were credited by the company to Stromerson and those proceeds were sufficient to liquidate the Averill account. On November 27, 1933, Stromerson and his wife, Leone, executed a quit claim deed conveying the real property in question to Averill. Stromerson states that Averill "told Leone and I that it was a quit claim deed by us in trust only, he says that he experienced hazards and automobile accidents and one thing and another, and that the only reason that he wanted it was if ever we both got killed or either one of us, that he might have some claim to the land, and he stated at that time that he would never record it." When asked why he took this quit claim deed, Averill stated, "Oh, I don't know of any particular reason I gave for it, except that I wanted it for my record security." This deed, though apparently delivered contemporaneously with its execution and kept thereafter in Averill's possession, was not recorded until August, 1937.

On January 25, 1935, a deed was executed by Miller & Lux Incorporated to Stromerson and his wife in joint tenancy.

At the same time plaintiffs executed two deeds of trust, each given to secure a promissory note in the principal sums of $6,300 and $3,600, respectively. These respective amounts were borrowed from the Federal Land Bank and the Land Bank Commissioner and were used partly to pay the balance due Miller & Lux Incorporated under the original contract of purchase. Averill was present when Stromerson applied for the Federal Land Bank loan at which time the former stated to the agent of the bank that his only claim in the transaction was in the sum of $900 due from Stromerson for two pumps installed upon the land and Averill signed and left with the bank a document to that effect. At that time Averill also agreed that, if Stromerson would pay the sum of $1200 to a Mr. Christiana, which sum was then owing by Averill to Christiana, said sum would pay for four mules and certain farming machinery theretofore owned by Averill, and which had been used in the farming of the land. That amount was paid to Christiana out of the money so borrowed.

In the years of 1936 and 1937 Averill suggested to Stromerson several plans, one, that the two join with other friendly neighbors in deeding their holdings including the real property in question to a corporation to be formed, another, that these lands be placed in a Massachusetts Trust and still another which contemplated the deeding of the land to one of the neighbors, a Mr. Lincoln, the purpose of which is obscure in the evidence. To each of these proposals, Stromerson expressed his refusal. Stromerson further stated Averill had never claimed ownership of land until his pleading was filed in this action. Plaintiffs made their home upon and engaged in the farming of the real property during the years following the signing of the contract of purchase.

The record thus reviewed, we think, fairly states the evidence as it appears favorably to the respondent. There is much that could be added which tends to establish appellant's theory which we have not mentioned. What has been set forth, and the inferences which can be reasonably drawn therefrom, we conclude is sufficient to justify the judgment of the trial court. This evidence warrants the deduction that respondent purchased the real property for himself and not in trust for appellant, and that the interest and assistance that appellant exhibited in the purchase, financing and farming of the land was prompted by the cordial friendship which

existed between the parties and was not done under any claim of ownership. With the conclusion of the trial court upon conflicting evidence we cannot interfere.

Considerable argument appears in the briefs as to whether the burden of proof shifted to the appellant upon proof of legal title in the plaintiff and as to the *quantum* of proof if the burden did so shift. Under appellant's theory the execution and delivery of the quit claim deed was equivalent to an assignment of the contract of purchase and the later payment of the balance due under the contract out of the proceeds of the loans procured upon the security of the land, raised a presumption of trust and cast upon respondents the burden of establishing an intention on the part of appellant to make respondents the absolute owners. We do not need to pass upon the correctness of that theory. Suffice it to remark that the trial court has found the evidence to preponderate against appellant upon this and the finding has justification in the evidence. The conclusion may be reasonably drawn from what has been recited from the record that the quit claim deed was executed and accepted as security against any liability that might exist against appellant in the financing of the purchase and in the farm operations. A deed executed and delivered under such circumstances is to be considered a mortgage. (Civ. Code, sec. 2924.) The discharge of the obligations for which the deed was given as security extinguished the mortgage.

Stromerson stated on cross-examination that he thought he had some letters from Miller & Lux Incorporated, relating to the Federal Land Bank loan and the deed from Miller & Lux Incorporated. Appellant requested him to produce them. The court overruled an objection to this request and asked the witness if he knew if he had such letters. The witness said he was not sure, and that he would have to look through his papers. Whereupon the court remarked: "That is all the time we can give that at this time." Claim is made that this resulted in an improper curtailment of cross-examination upon an important matter. We find no merit in this. The fair import to be drawn from that remark is that the matter could be later gone into after the witness had had an opportunity to make a search for such letters. Aside from a short discussion between counsel about available letters in which appellant stated he was not interested and

which followed the court's statement, the letters were not again referred to by appellant.

■ Averill had testified on direct examination that the assignment on the back of the contract was executed at his request after the contract was received from Miller & Lux Incorporated, and the document had been in his possession ever since. He was then asked on cross-examination if he did not, after this action was filed, go to the office of the San Joaquin Cotton Oil Company and ask permission to see the contract between Miller & Lux Incorporated and Stromerson. A colloquy between counsel developed that the question referred to a contract other than the one heretofore mentioned, and referred to by the witness in the direct examination. An objection then made to this line of inquiry was overruled. The ensuing examination developed that the contract so mentioned, and which we will for convenience refer to as the second contract, covered the purchase and sale of a tract of land other than that involved in this action; that appellant had obtained the second contract from the San Joaquin Cotton Oil Company, and, while in his possession, had inserted his own name as assignee in the blank space provided for the name of the assignee in a form of assignment thereon which bore Stromerson's signature as assignor; that this had been done without authorization from either the San Joaquin Cotton Oil Company or Stromerson; that as so altered this document was returned to the company by appellant. There appears also upon the second contract and below the assignment these words "I hereby withdraw as assignee of the above instrument, Roger Averill." An official of the company testified that this latter endorsement was not on the document when it was returned to the company. Appellant complains that this cross-examination was permitted over objections to extend beyond proper. limits resulting in the reception of evidence highly prejudicial to him.

As above stated, Averill had asserted that' the contract here in question had at all times been in his possession since it was received from Miller & Lux Incorporated. Respondents sought unsuccessfully in the cross-examination of Averill to obtain an admission from him that to his knowledge the Cotton Oil Company always required an assignment of an

outstanding contract for the purchase of land to secure its advances to the vendee of such land.

■ Although the cross-examination of a witness should be confined to matters which have been testified to by the witness on direct examination, a wide latitude is permitted for the purpose of testing accuracy or credibility. This is especially true if the witness is himself a party to the action. (*Neal* v. *Neal*, 58 Cal. 287.) The fact that the second contract was to the witness' knowledge deposited with, and kept by the company to secure against advances comes within the reasonable limits of the cross-examination. Elicitation of an explanation of the endorsements thereon also was proper as throwing light upon the knowledge of the witness as to the purpose for which the second contract was deposited with the company, in the light of that explanation.

■ Mr. Jensen of the San Joaquin Cotton Oil Company, a witness at the trial, was asked concerning his connection with the purchase of the property in question. He volunteered in his answer the statement that Averill stated to him that he "wanted to purchase this land in the name of Harry Stromerson". A motion to strike the answer was granted upon the ground that it was hearsay. Appellant urges that this was error, and claims this testimony was proper under section 1850 of the Code of Civil Procedure which provides that where a declaration forms a part of a transaction which is itself a fact in dispute, or evidence of that fact, such declaration is evidence, as part of the transaction. He claims that if the fact sought to be established is that certain words were spoken, without reference to their truth or falsity, the statement is original or primary evidence and admissible. There is diversity of authority as to the rule. If the declaration is admitted to show the truth of the statement it is hearsay, but if it is admitted to prove merely that the statement was made it does not come within the general prohibitions of hearsay. The rule which appears to have the weight of judicial support is that a declaration is admissible to show the present state of mind or intent of the declaration, where such state of mind or intent is material. (Wigmore on Evidence, 2d ed., 1729.) If a statement is made spontaneously or under such circumstances as to fairly indicate verity the reason for the exclusion of hearsay is weakened. As Justice Holmes stated in *Elmer* v. *Fessenden,* 151 Mass. 359 [24 N. E. 208,

5 L. R. A. 724], "Such declarations, made with no apparent motive for misstatement, may be better evidence of the maker's state of mind at the time than the subsequent testimony of the same persons."

However, the ruling complained of, if erroneous, is not of such seriousness as to require or justify reversal. The excluded statement is not entirely inconsistent with plaintiff's theory. Averill's purchase of the land in Stromerson's name does not exclude the possibility that it was also purchased for Stromerson. We cannot say that this ruling resulted in a miscarriage of justice. (Const., art. VI, sec. 4½.)

There are other assignments of alleged error in rulings of the trial court upon the admission of certain evidence. We have reviewed them and they do not justify any extended comment. In one instance the answer obviously would have been wholly immaterial, in another the question objected to sought an answer, the substance of which related to what was undisputed and otherwise established without conflict. The last objection relates to the reception of certain evidence which was properly received.

The judgment is affirmed.

Tuttle, J., and Thompson, Acting P. J., concurred.