[L. A. No. 17042.   In Bank.—April 30, 1941.]

ROSA STEINER, Respondent, v. IRMA AMSEL, as Administratrix, etc., et al., Appellants.

Stewart, Shaw & Murphey and Arvin B. Shaw, Jr., for Appellants.

Swafield & Swafield, Kenneth Sperry and Joseph E. Madden for Respondent.

SHENK, J.—By her complaint the plaintiff sought an adjudication that she was the owner of and entitled to a one-third interest in certain properties held by the defendant, Farmers and Merchants Trust Company of Long Beach, as trustee, and that the rights of the other defendants were subordinate to hers. The plaintiff had judgment and the defendants appealed.

The events leading up to the filing of the action are briefly the following:

In 1906 the plaintiff, Rosa Steiner, with her husband and two daughters, came to this country from Hungary. Here they became acquainted with Sam Amsel, who had also come to this country, leaving his wife and four daughters in Hungary. Sam Amsel took up his abode with the Steiners in Southern California. Steiner and Amsel engaged in the business of peddling vegetables on a partnership basis. They went into the dairy business together. In 1912, under the name of Steiner & Amsel, they commenced and carried on the raising and selling of sugar beets. Each had an equal share in the business. On November 14, 1915, Steiner died. Amsel and the plaintiff then carried on the business under an agreement to share it equally; but after consultation with a representative of the sugar beet company who knew of the plaintiff's half interest, it was decided to carry on the business in the name of Sam Amsel alone. During the subsequent period both the plaintiff and Amsel worked diligently raising beets on large rented acreages. The plaintiff cared for the ranch house and prepared the meals for the ranch help. She also assisted Amsel in supervising the work of the ranch hands. She kept the books of account and paid the hired help. In the early period the profits were not large, but such thereof as were not needed to defray household expenses were sent by Amsel to his family in Hungary. The plaintiff's two daughters also helped with the chores when at home from school and earned money which they contributed to the household. The plaintiff spoke only a little English and her education had been limited. Hungarian was the language spoken in the household and at family conferences.

In 1920 a representative of the sugar beet company suggested that the plaintiff and Amsel purchase 183 acres of land at Long Beach at $600 an acre. The plaintiff and Amsel decided to buy the land and title was taken in the name of Sam Amsel. The plaintiff's share was fixed at one-third instead of one-half. The sugar beet company advanced the down payment of $10,000, secured by a 900-acre crop of growing beets. Shortly thereafter Amsel's wife and their four daughters came to the United States and lived at the ranch house. Difficulties arose and at the end of the sum-

mer of 1921 Mrs. Amsel and the four Amsel girls removed to Los Angeles. There is evidence that they were aware of the partnership interest of the plaintiff and of the extent thereof.

In August, 1922, 101.8 acres of the 183 acre tract were sold for $114,052. The proceeds from this sale were sufficient to liquidate the balance owing on the original purchase contract. At that time Sam Amsel paid or promised to pay to or invest for the plaintiff the sum of $20,000, whereupon the two signed a mutual general release and discharge of all demands.

In March, 1923, 13.48 acres of the tract were sold for $40,000 under a subdivision trust, and the plaintiff received an additional $10,000.

On February 2, 1924, the remaining 67.84 acres were contracted to be sold to one Burrows at $4,000 per acre, a total purchase price of $271,360. Title was transferred by Amsel to the defendant, Farmers and Merchants Trust Company of Long Beach, as trustee under a trust agreement naming Sam Amsel as trustor and Burrows as beneficiary. The trustee was authorized to liquidate certain indebtednesses and the purchase price of the land from the proceeds received by it from sales of subdivided lots.

In the meantime Sam Amsel and his wife had arrived at a settlement of their property rights. Thereupon, also on February 2, 1924, Sam Amsel executed an assignment to said Farmers and Merchants Trust Company of Long Beach, authorizing it to pay to Mrs. Amsel one-half of the moneys coming to him under the trust agreement until the sum of $85,000 should have been paid to her, without interest. Mrs. Amsel also received Sam Amsel's note for $5,000 as a part of the settlement.

There is evidence that the plaintiff knew of the sale of the remainder of the 183 acre tract under the trust agreement and that Amsel was receiving payments thereunder. Discussions and arguments arose, the plaintiff asking for her share of the proceeds. The record shows that Amsel stated to the plaintiff that he needed all available funds to settle with his family, and requested the plaintiff not to bother him and he would see that she got her share as soon as he had completed his obligations to his family. In the meantime he paid her sums aggregating $1700.

Mrs. Amsel died on April 11, 1927. She had received $13,118.17 under the $85,000 trust assignment. Sam Amsel died on December 20, 1931, and his daughter, Irma Amsel, was appointed administratrix of his estate. On July 30, 1932, soon after publication of notice to creditors, the plaintiff presented to the administratrix of Amsel's estate a claim of ownership in the trust property and for moneys claimed to be due to her from the estate. On March 31, 1936, the administratrix rejected the claim, and on June 30, 1936, the plaintiff commenced this action.

The defendants answered and, with the exception of the Farmers and Merchants Trust Company of Long Beach, each defendant interposed the defense of the statute of limitations. At the close of the plaintiff's case the Trust Company asked leave to amend its answer to include the defense of the statute, but the request was denied.

At the time of trial it appeared that the Trust Company had in its possession, as undistributed or undisposed of property under the trust agreement, the sum of $5,670.66 proceeds from sales, about 50 subdivided lots valued at $100 per lot, and 19 acres of land valued at $1500 per acre.

The trial court found that Sam Amsel held title to one-third of the 183 acre tract, and one-third of the beneficial interest under the trust agreement, for the plaintiff, and that the plaintiff was the equitable owner of one-third of the beneficial rights under the trust agreement. It was found that the moneys received by the plaintiff from Sam Amsel in 1922 and 1923 were paid and received in recognition of her one-third beneficial interest in the land sold in those years and that the release executed by the plaintiff in August, 1922, was not intended by the parties to exclude the plaintiff from her interest in the lands remaining unsold at that date; that subsequently Sam Amsel admitted and recognized the plaintiff's one-third interest in the remaining lands. It was also found that the claimed rights of the defendants were subject and subordinate to the claims of the plaintiff. ▮ The evidence that the wife and daughters of Sam Amsel had knowledge of the plaintiff's interest in the partnership property was sufficient to support the court's finding and conclusion that their interests were subject to the interest of the plaintiff.

The court also found that the plaintiff's cause of action was not barred by any statute of limitations. It found that during the administration of the trustee under the trust agreement, Sam Amsel, his heirs or assigns, had received a total of $137,027.23 of the moneys payable to the trustor thereunder; that of such moneys the plaintiff had received but $1700; that the wife or daughters of Amsel had received all but $10,588.73 of the $85,000 assigned by Amsel; that the trustee held the sum of $5,670.66, and title to a large amount of real property, the value of which was so speculative as to render it doubtful whether sufficient property remained to secure the payment of the balance of the purchase price of the 183 acre tract; that to do equity between the parties it was necessary and proper that the plaintiff receive the sum of $66,813.61 before any further distribution be made to any of the defendants claiming an interest in the trust property.

There is sufficient support for the findings of the court. The court concluded therefrom that the plaintiff was the owner of an undivided one-third interest in all the properties transferred by Sam Amsel under the trust agreement and that she was entitled to receive, and the trustee was directed to pay to her, all moneys and property available for distribution from the trust estate until she should have received the equivalent of $66,813.61 before any distribution be made to the defendants claiming an interest, and one-third of all money or property thereafter available for distribution.

The principal controversy revolves around the contention that the trial court erred in its ruling that the cause of action was not barred by the four year statute of limitations (Code Civ. Proc., secs. 337, subd. 1, and 343). It is also contended that the plaintiff's action was barred by laches.

It is clear that the trust subsisting in Sam Amsel's lifetime, and which was not repudiated by him, was a voluntary and continuing trust, whether intended as an express or a resulting trust, as distinguished from an involuntary trust. (*Schroeder* v. *Jahns*, 27 Cal. 274; *Title Ins. & Trust Co.* v. *Ingersoll*, 158 Cal. 474 [111 Pac. 360]; *Lezinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240 [196 Pac. 884]; *England* v. *Winslow*, 196 Cal. 260 [237 Pac. 542]; *Mix* v. *Yoakum*, 20 Cal. 681 [254 Pac. 557].) As stated in the case of *Title Ins. & Trust Co.* v. *Ingersoll*, *supra*, at page 484, the

question whether the evidence was sufficiently convincing to create such a trust was a question primarily addressed to the trial court, and its determination thereon should be deemed conclusive.

■ Relying on *Norton* v. *Bassett,* 154 Cal. 411 [97 Pac. 894, 129 Am. St. Rep. 162], the defendants contend that the statute of limitations commenced to run from the death of Sam Amsel and that therefore the plaintiff filed her action too late. They urge that this is not a case such as *Schroeder* v. *Jahns, supra,* wherein it was held that the statute commenced to run from the rejection of the claim filed against the estate of the deceased trustee. It is stated that the plaintiff herein was not a creditor of the estate, but was seeking to recover or impress with a trust certain property which she claimed as her own and that the filing of a claim was unnecessary (*Roach* v. *Caraffa,* 85 Cal. 436 [25 Pac. 22]; *Mix* v. *Yoakum, supra,* p. 685; *Newport* v. *Hatton,* 195 Cal. 132, 150 [231 Pac. 987]); that the personal representative of Sam Amsel did not succeed to the trusteeship of an express and continuing trust, but became merely an involuntary trustee for the plaintiff's benefit; that the statute of limitations was set in motion at the creation of the involuntary trusteeship, that is, upon the death of Sam Amsel, and that the plaintiff, having brought her action more than four years after Amsel's death, could not rely upon any repudiation by such involuntary trustee to extend the period of the statute.

The facts of this case do not bring it within the rule relied upon by the defendants. That rule depends upon the existence of a trust in the decedent at the time of his death before an involuntary trusteeship could be created. In this case, in so far as we are concerned with the properties remaining in the trust, it was the defendant, Farmers and Merchants Trust Company of Long Beach, and not Sam Amsel, who held the legal title. ■ When the legal title was transferred to that company, no consideration having been paid therefor, it continued impressed with the same trust to which it was subject when Sam Amsel held the legal title (*Allen* v. *Meyers,* 5 Cal. (2d) 311 [54 Pac. (2d) 450]). The evidence discloses no repudiation by the trustee. ■ Although the existence of the original trust was known to the other defendants, it might have been a secret trust in so far as

the defendant trustee was concerned. But that fact would not excuse the defendant trustee from the duty of executing the trust as soon as its existence was made known to it. (*Estate of Lyon,* 163 Cal. 803 [127 Pac. 75]; *Thompson* v. *Bank of California,* 4 Cal. App. 660 [88 Pac. 987]; see, also, *England* v. *Winslow, supra.*) █ The rights by succession of the other defendants in the trust property did not cut off the plaintiff's beneficial interest. Those defendants did not part with value, and they and their mother had knowledge of the nature and extent of the plaintiff's interest. In so far at least as the controversy relates to the specific trust property in the hands of the defendant trustee, they are not protected against the claims of the true owner (see *Newport* v. *Hatton, supra,* p. 151), and the judgment confined the plaintiff to a recovery of her beneficial interest from the property remaining in the hands of the trustee.

█ The defendant trustee contends that the court erred in denying its request to amend its answer by including the defense of the statute of limitations. The denial of the request, made at the close of the plaintiff's case, was within the trial court's reasonable discretion (see *Wrightson* v. *Dougherty,* 5 Cal. (2d) 257, 266 [54 Pac. (2d) 13], and cases cited), and no abuse thereof is here disclosed. The refusal to permit the plea by the defendant trustee did not prejudice any of its rights. That defendant was not the representative of the estate of either Sam Amsel or his wife. Its duty was not to preserve the property for their heirs exclusively. Its duty was to protect and preserve the property for the owners thereof.

The defendants assert that although they did not plead the defense of laches, the trial court, sitting as a court of equity, should have concluded that the plaintiff delayed unreasonably in bringing her action. (See *Chapman* v. *Bank of California,* 97 Cal. 155, 159 [31 Pac. 896].) What has been said respecting a plea by the defendant trustee of the statute of limitations applies also to its asserted right to plead laches. (See *England* v. *Winslow, supra;* also *Cohn* v. *Cohn,* 7 Cal. (2d) 1 [69 Pac. (2d) 969].) █ The like contention of the other defendants is fully answered by the evidence and the findings concerning the plaintiff's limited education, the relationship of trust and confidence existing between her and Sam Amsel, her promptness in endeavoring to protect her

rights by the filing of a claim against the estate of Sam Amsel, and by the commencement of this action shortly after the denial of the claim.

The record fully supports the judgment and no error is disclosed.

The judgment is affirmed.

Curtis, J., Traynor, J., Carter, J., and Gibson, C. J., concurred.