[Sac. No. 5368. In Bank. Sept. 30, 1943.]

H. C. STROMERSON et al., Appellants, v. ROGER AVERILL, Respondent.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Appellants.

Barcroft & Barcroft, David E. Peckinpah and L. N. Barber for Respondent.

GIBSON, C. J.—Plaintiffs, H. C. Stromerson and his wife, brought this action to quiet title to a 562-acre tract which was being purchased under contract from Miller & Lux, Inc. in Stromerson's name. Defendant Averill alleged in his answer that Stromerson acted as his agent in making the contract to purchase the land, denied plaintiffs had any interest therein and prayed that title be quieted in him. The court found in accordance with the allegations in defendant's answer and plaintiffs appealed from the judgment for defendant. For the purposes of clarity and brevity H. C. Stromerson will be treated here as the sole plaintiff.

The parties had been acquainted for many years, Stromerson at one time having been employed by Averill in the contracting business. In 1933 Averill, who was then farming on a large scale in Madera County, hired Stromerson as a foreman at a starting salary of $75, later increased to $150, per month. Although Stromerson then had no agricultural experience, he soon became a capable farmer and continued to work for Averill in the capacity of foreman until he was discharged shortly before this action was commenced. Before Stromerson was employed, Averill had adopted the practice of having some of the land used in his extensive operations held in the names of employees. This may have been partly for the purpose of avoiding a restriction on the amount that could be loaned to one person by the bank which financed

Averill. It appears that Averill had received the limit that could be loaned to one person and the bank knew of the practice referred to. One tract of 475 acres purchased by Averill from Miller & Lux was in the name of P. A. Davis, the farm superintendent. Another tract of 640 acres, also bought from Miller & Lux, stood in the name of a foreman, J. F. Lincoln. The combined farms, including the 562-acre tract here involved, were operated as a unit. Davis managed the farms and, working under his direction, Lincoln and Stromerson supervised the planting, cultivating and harvesting of the crops. Averill determined matters of policy and took care of financing the operations, which was handled in part through advances made by the San Joaquin Cotton Oil Company on crop mortgages and the personal credit of Averill.

Bank accounts for the combined farming operations at one time stood in the names of Averill, Davis and Stromerson, at another time in a single account in the names of Averill, Davis, Stromerson and Lincoln, then in four separate accounts, and finally in the name of Roger Averill and Associates. Except in 1934, each of the four· was authorized to check on any of the accounts. The larger bills were paid by Averill or Davis, while Stromerson or Lincoln usually signed checks for labor. Stromerson drew checks for his own salary on these accounts. In making payments to meet the cost of operating the several farms, checks were drawn without regard to the source of funds in a particular account and without reference to the tract for which the expenditure was made. Each year a budget was made for the operation of the several farms and filed with the Cotton Company. Crop mortgages were given by the different individuals to secure advances made, but the money received therefrom was deposited by Averill or Davis in the bank account which needed the money. All notes were indorsed by Averill.

In the early part of 1936 Averill negotiated with Miller & Lux for the purchase of the 562 acres in controversy. Nothing was said to Stromerson concerning the transaction until it was completed. The contract for this acreage was taken in the name of Stromerson, as vendee. He executed an assignment in blank on one copy of the contract and delivered it to Averill who deposited it with the Cotton Company as further security for advances. The initial payment of $1,775 was borrowed from Allen, the real estate agent who handled the transaction. The note covering the loan was signed by Averill, Davis and Stromerson, and was later paid by a draft issued

by the Cotton Company and charged to Averill's account. The first installment was paid by Averill from his personal bank account, the second installment, and only other payment before the commencement of this action, was paid by a check drawn by Averill on the account of Roger Averill and Associates.

Averill testified, as to the agency relationship, that Stromerson was his agent for all purposes, and that it was Stromerson's duty under the agency to carry the contract in Stromerson's name the same as Davis and Lincoln did as to other parcels. It further appears that Averill offered Davis, Lincoln and Stromerson a fifteen-year contract covering the operation of the several farms. Davis testified that in the spring of 1937 he discussed this offer with Lincoln and Stromerson and that Stromerson said he did not want to be tied up. Stromerson stated that he would like a piece of land instead and that he wanted 80 acres for his part. Davis testified that in discussing the matter the three of them agreed that Lincoln should also have 80 acres and that Davis should have 140 acres. Stromerson further stated that Averill had promised him a percentage of the net income and Stromerson said that if the three of them would "stick together" they could get some land from Averill. Although this conversation took place shortly before Stromerson was discharged, and involved the relation of the parties with reference to the combined farming operations, nothing was said which indicates Stromerson was then making any claim to the ownership of the 562 acres. In fact, the inferences are plainly to the contrary.

Stromerson contends the evidence is not sufficient to support the finding that he was the agent of Averill in the purchase of the 562 acres of land. The agency is established by the testimony of Averill, but Stromerson asserts that Averill's testimony is "false, inherently improbable and unworthy of belief." In support of this assertion, certain claimed inconsistencies, contradictions and admissions in Averill's testimony are pointed out. Reference is made to the fact that after Stromerson was discharged Averill attempted to have a new contract issued to him covering the 562 acres by filling in his name as assignee in the assignment which Stromerson had executed in blank. Since Stromerson entered into the contract as Averill's agent and delivered it to him with an assignment executed in blank, there was certainly nothing in

the conduct of Averill which compels a conclusion that his testimony is unworthy of belief.

It is also claimed that an admission made by Averill with respect to another transaction was inconsistent with his testimony concerning the ownership of the land in question. Shortly after Stromerson went to work for Averill a tract of 160 acres was purchased on contract from Miller & Lux and the contract was taken in Stromerson's name. In 1935 Stromerson made application to a bank for a loan to make a final payment on the purchase price. The loan was obtained and the deed issued to Stromerson. Averill admitted in substance that he informed the bank that Stromerson was the owner. Although the 160-acre tract is not involved here, and that transaction occurred long before the purchase of the 562 acres, it is argued that since Averill later claimed ownership to the 160 acres upon the theory that Stromerson purchased it as his agent, such admission conflicts with his claim here. The most that can be said of this contention is that the admission could be considered with other evidence in determining the relationship of the parties in the two transactions, or it might constitute impeachment on a collateral matter. In this connection it is argued that inasmuch as it was determined in another action that Stromerson was the owner of the 160-acre tract, the judgment in this action should not be allowed to stand because inconsistent therewith. (See *Stromerson* v. *Averill*, 39 Cal.App.2d 118 [102 P.2d 571].) Although the transactions were similar in many respects they differed materially in some particulars, and we cannot say that wholly inconsistent results have been reached in separate judgments on the same issue.

Stromerson also asserts that Averill's testimony is unworthy of belief because his claim of ownership is inconsistent with references made in correspondence with Miller & Lux to the "Stromerson contract" and the contract between "yourselves and Stromerson." Since Stromerson was the party named in the contract the identification of the instrument in this manner does not in any way conflict with Averill's version of the transaction.

Other instances of asserted conflicts and contradictions are cited in support of the contention that Averill's testimony is so unworthy of belief that it should be entirely disregarded. We have carefully examined the evidence and find no merit in the contention. Inconsistencies only affect the credibility of the witness or reduce the weight of his testimony

and it was for the trier of the fact to weigh the evidence and determine his credibility. (10 Cal.Jur. p. 1146, §364.)

Furthermore, it is the duty of the court in support of a judgment on appeal to harmonize apparent inconsistencies wherever possible. (2 Cal.Jur. p. 938, §551.)    It might also be noted that the testimony of Averill was supported by many circumstances and corroborated in important particulars by Davis, Lincoln and others. In our opinion there was substantial evidence to sustain the finding that Stromerson was acting as Averill's agent in the purchase of the 562 acres of land.

It is contended, however, that since the judgment is based upon constructive fraud the facts which are relied upon to establish the fraud must be proved by clear, satisfactory and convincing evidence. The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal. *(Steiner* v. *Amsel,* 18 Cal.2d 48, 53, 54 [112 P.2d 635] ; *Steinberger* v. *Young,* 175 Cal. 81, 84, 85 [165 P. 432] ; *Couts* v. *Winston,* 153 Cal. 686, 688, 689 [96 P. 357].)

It is also contended that the statute of frauds bars recovery by Averill. A constructive trust which is created by operation of law need not be in writing. (Civ. Code, §852.)

When Stromerson, as agent, took the contract in his name for Averill and later repudiated his fiduciary duty to hold the same for his principal, he became constructive trustee of the equitable title to the property. (Civ. Code, §2224; Rest., Agency, §414; Rest., Restitution, §194; Williston on Contracts, rev. ed., vol. 4, §1024.)

It is urged that the facts giving rise to the constructive trust were neither sufficiently alleged nor found. Averill alleged that the contract and the equitable title to the property belonged to him and that Stromerson executed the contract at his request as his agent and employee. The court found that in executing the agreement of purchase Stromerson acted as the agent of Averill and that the contract was in fact the contract of Averill, and that Averill is the equitable owner of the property. The facts necessary to give rise to the constructive trust were properly pleaded and found.

Stromerson argues that by failure to deny an allega-

tion in the complaint Averill admitted "that the property described herein is the community property of H. C. Stromerson and Leone Stromerson, his wife." Averill did not specifically deny that particular allegation. He did, however, deny that the stromersons were the owners of or had any interest in the property or the contract and alleged himself to be the owner, thereby answering the allegation of ownership.

Other errors are claimed with reference to the admission of evidence which do not merit discussion. We are satisfied that in most of the instances no error occurred, while in others if error was committed it was not prejudicial.

Stromerson has requested leave to introduce additional evidence. It appears that after this appeal was taken Averill commenced an action against Stromerson to recover $35,572.69 allegedly due on an open book account and representing moneys loaned and advanced to improve the 562 acres. A writ of attachment was issued in that action and levied upon the property here involved. It is argued that such conduct is inconsistent with the claim of agency and the further claim of ownership by Averill. The second action was brought to prevent the running of the statute of limitations during the pendency of this appeal. The situation is somewhat analogous to the pleading of inconsistent defenses one of which cannot be used to destroy the other. (See *Miller* v. *Chandler,* 59 Cal. 540; *Billings* v. *Drew,* 52 Cal. 565; *Harding* v. *Harding,* 148 Cal. 397 [83 P. 434]; *Buhne* v. *Corbett,* 43 Cal. 264; *Calexico Lumber Co.* v. *Emerson,* 54 Cal.App. 239 [201 P. 612]; 21 Cal.Jur. 134.) The fact that Averill brought a second action containing allegations inconsistent with his position in this case is not material on this appeal.

We are of the opinion, however, that the judgment does not dispose of all of the conflicting claims of the parties connected with the acquisition, operation and development of the property. Stromerson assumed personal liability under the contract of purchase from which he should be relieved. It further appears that other outstanding obligations may have been incurred, or expenditures made, by one party for the benefit of the other, in relation to the joint farming operations, and that an accounting is required in order to do complete equity.

The judgment is therefore reversed and the cause remanded to the trial court to take such accounting. The court shall

thereupon make a decree declaring the legal title to the contract of purchase and the equitable title to the property are in Averill subject to his payment of any sums found due Stromerson and to the discharge by Averill of any obligations incurred by Stromerson on his behalf in connection with the property. Each party shall bear his own costs on this appeal.

Shenk, J., Curtis, J., Edmonds, J., and Schauer, J., concurred.   Carter, J., did not participate.

TRAYNOR, J.—I dissent. It was incumbent upon defendant to support his contention that Stromerson was his agent and held the equitable title to the property as constructive trustee, under the rule that the evidence in such cases must be "clear, satisfactory and convincing; explicit, unequivocal and indisputable." (*Wehle* v. *Price*, 202 Cal. 394, 397 [260 P. 878] ; *Goodfellow* v. *Goodfellow*, 219 Cal. 548, 554 [27 P.2d 898] ; *Woods* v. *Jensen*, 130 Cal. 200, 203 [62 P. 473] ; *Sheehan* v. *Sullivan*, 126 Cal. 189, 193 [58 P. 543] ; *Plass* v. *Plass*, 122 Cal. 3, 12 [54 P. 372] ; *Taylor* v. *Bunnell*, 211 Cal. 601 [296 P. 288] ; *Olson* v. *Olson*, 4 Cal.2d 434 [49 P.2d 827] ; see Bogert, Trusts and Trustees, vol. 1, p. 231; 23 A.L.R. 1500; 65 C.J. 325.) It is my opinion that the trial court did not observe this rule in weighing the evidence in the present case. It is apparent that there was some cooperative arrangement between Stromerson, Averill, Lincoln, and Davis, and the evidence suggests a partnership. It does not in my opinion warrant the conclusion that it is highly probable that the relationship between Averill and Stromerson in the purchase of the land in question was that of principal and agent. If there was no agency there could be no trust under the authorities relied upon in the majority opinion.

While it rests primarily with the trial court to determine whether the evidence is clear and convincing, its finding is not necessarily conclusive, for in cases governed by the rule requiring such evidence "the sufficiency of the evidence to support the finding should be considered by the appellate court in the light of that rule." (*Sheehan* v. *Sullivan*, 126 Cal. 189, 193 [58 P. 543] ; see, also, *Moultrie* v. *Wright*, 154 Cal. 520 [98 P. 257].) In such cases it is the duty of the appellate court in reviewing the evidence to determine, not simply whether the trier of facts could reasonably conclude that it

is more probable that the fact to be proved exists than that it does not, as in the ordinary civil case where only a preponderance of the evidence is required, but to determine whether the trier of facts could reasonably conclude that it is highly probable that the fact exists. When it holds that the trial court's finding must be governed by the same test with relation to substantial evidence as ordinarily applies in other civil cases, the rule that the evidence must be clear and convincing becomes meaningless. It is a contradiction that while the vitality of the rule is thus destroyed its soundness is not questioned. If, as in my opinion, the rule is sound, this court has erred in its pronouncements (see 25 Cal.Jur. 248; 2 Cal.Jur. 921) declining to accept responsibility for its enforcement.

Appellants' petition for a rehearing was denied October 30, 1943. Curtis, J., and Schauer, J., dissented on the ground that appellants should recover their costs of appeal. Traynor, J., voted for a rehearing. Carter, J., did not participate therein.