[Civ. No. 14829.  First Dist., Div. Two.  May 26, 1952.]

JEANETTE A. STAUDINGER, Respondent, v. CATHERINE WHITLOCK et al., Appellants.

Martin J. Jarvis, Elmer P. Delany and Delany, Jarvis, Fishgold & Werchick for Appellants.

George D. Collins, Jr., for Respondent.

GOODELL, J.—In a trial without a jury the plaintiff was awarded $3,700 damages for personal injuries. A new trial was denied and the defendants appealed from the judgment.

Appellants, mother and son, owned and operated a guest house on Chestnut Street in San Francisco, and on April 29, 1946, respondent became a guest therein at a monthly compensation. On May 17, 1946, at about 6:15 p. m. while descending the stairway on her way from her room to the dining room on the main floor respondent missed her footing on the second or third step from the bottom and fell to the floor of the lobby, sustaining a serious injury to her right arm.

The principal question on appeal is whether the evidence is sufficient to sustain the finding that appellants were negligent and that respondent was free from contributory negligence.

The negligence is alleged to have consisted in the "failure to install and keep burning artificial light sufficient in volume to illuminate properly said stairway and to have a handrail

on said stairway, and in defendant's maintaining the steps of said stairway so similar in color to the floor at the bottom thereof and adjacent thereto, as to make them indistinguishable from each other in the light available at the time hereinabove mentioned;'' and that as a result of such negligence ''plaintiff was unable to see the last step of said stairway, missed the same and fell . . .'' The court found all the allegations of the amended complaint to be true except as to damages, which were found to be $3,700. All the allegations and denials of the answer were found to be untrue.

A comment made by the judge during the trial helps to simplify the discussion on this appeal. He said: ''It is a question of veracity as to the amount of light at the time of the accident. The house could have 100 windows—the important thing for the court to determine is how much light existed at the time of the accident. That is the whole thing in the case.''

At the time of the accident the other guests seem to have been in the dining room. At any rate nobody witnessed the fall excepting respondent.

Several photographs in evidence show the stairway (and part of the lobby) of what is apparently a substantial and well appointed dwelling-house (other evidence in the case shows it was formerly a private residence.) The stairs are of oak. The photographs show a landing (where the stairway makes a right-angle turn) and a flight of eight wide uncarpeted steps descending from the landing to the lobby. On the right side of the stairs (descending) is a wide banister which parallels the path of the stairs down to and including the second step from the bottom. It ends on the bottom step, where it circles away to the right at a newel post. On the floor of the lobby there was an orange or yellow Chinese rug with a 12-inch black border. The floor at the bottom of the stairs appears to be of the same color as the stairs, but the black border of the rug rested against the bottom step. Respondent testified that there was no artificial light burning at the time of the accident, that there was a wall bracket light high on the wall of the landing (eight steps up from the lobby) but that it was not turned on and she did not know how to turn it on. Because of the black border of the rug and the darkness at the foot of the stairs, respondent, according to her testimony, thought she had reached the bottom when in fact she was on the second or third step from the bottom. She let go the banister, stepped off and fell. Although ap-

pellants testified that there were large windows near the stairway, respondent testified that vines hung over them on the outside. The drawing room, which has a large window, adjoins the lobby and its doors into the lobby are permanently open. Respondent testified that it was a dark, cloudy day, but appellant Wendell Whitlock testified that it was clear later that evening when he took respondent to the hospital and his mother testified that it had been a bright day because the sun was shining in the dining room windows that evening.

Appellants admitted that there was no artificial light burning, but contended that the stairway was adequately lighted. Respondent testified that the dining room door opposite the foot of the stairs was closed. Appellant Wendell Whitlock testified that the maids had orders to leave the dining room doors open from 6 to 6:30 p. m. but he could not state positively that they were always open. He testified that light from the dining room aided in sufficiently lighting the stairs at that time of day. As stated above, respondent testified that the door was closed.

Respondent admitted that she had congenitally weak eyes but that she was wearing her glasses at the time of the accident, and that with glasses her eyesight was good; her occupation for some years had been that of a bookkeeping machine operator. She testified that it was always dark on that stairway, and that she descended the stairs that evening "just as I naturally would."

A doctor who arrived at about 7:30 p. m. testified that the stairway was certainly not well lighted. A guest who had come to live there some two years after the accident, testified that a person could read a newspaper on the stairway and in the hallway without artificial light between sunrise and sunset. On the day of the accident the sun set at 7:06 p. m., or about 51 minutes after the accident.

From the foregoing summary it is clear that there was conflicting testimony respecting the lighting conditions at the time in question.

Appellants contend, first, that the record does not show that they violated any legal duty owed by them to respondent. They say that it is well established that an innkeeper owes no duty to an invitee in cases where the injury is due to a patent defect in the premises or equipment, and there is no liability for injury from dangers that are as obvious to the person injured as to the owner or occupant, citing *Goldstein* v. *Healy*, 187 Cal. 206 [201 P. 462] ; *Mautino* v. *Sutter Hospital*

*Assn.*, 211 Cal. 556, 561 [296 P. 76]; *Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 P. 793] and *Morton* v. *Manhattan Lunch Co.*, 41 Cal.App.2d 70, 72 [106 P.2d 212]. They argue that the condition of the stairway was known to respondent prior to the injury, and that there is no showing that they had any knowledge of the particular condition superior to that of respondent.

Respondent had lived there for almost three weeks and knew the stairway, but her case is not based on any defect either latent or patent in the stairway itself, hence the cases relied on have no bearing. Had the steps been kept in a highly polished and slippery condition the case would bear a resemblance to the Mautino case but no such condition appears. The respondent's case is grounded, as her complaint shows, on the insufficient lighting of what was otherwise a safe stairway (as in the case of *Hall* v. *Bakersfield Community Hotel Corp.*, 52 Cal.App.2d 158 [125 P.2d 889]) and the court's comment quoted earlier shows that that was the controlling consideration.

The duty of innkeepers with respect to adequate lighting is stated at 43 Corpus Juris Secundum page 1179, section 22, as follows: "there is a duty to exercise ordinary or reasonable care to keep the hallways, passageways, and stairways reasonably well lighted and free of obstructions or hazards." In 28 American Jurisprudence page 580, section 58, in discussing the duty of an innkeeper as to stairways it is stated that "liability may also be predicated upon a failure to provide proper lights . . ."

This case is essentially the same as *Hall* v. *Bakersfield Community Hotel Corp., supra,* cited by respondent. There the plaintiff, a woman guest of defendant's hotel, fell while going from a hallway to a banquet room, the floor of which was about a foot below the hallway. There was but one step leading down from the hallway to the banquet room; the lighting was poor; and the color of the floor was the same as that of the step. The defendant there conceded that the evidence supported the implied finding of the jury that the hallway, the banquet room and the steps leading down into it were not sufficiently lighted. The appellants here make no such concession, but whether the stairs in the instant case were or were not sufficiently lighted was a question of fact. The first question in the Bakersfield case was whether the jury could draw the reasonable inference that the negligence of the defendant was the proximate cause of the injury. That question of

course was also present here. Another question in that case was that of contributory negligence. It was contended, as it is here, that the plaintiff was guilty of contributory negligence as a matter of law. ██ The court said (p. 163) ''Under the evidence her contributory negligence was a question of fact addressed to and settled by the jury in her favor. We cannot disturb that implied finding on appeal.'' The same may be said here. See, also, *McStay* v. *Citizens Nat. T. & S. Bank,* 5 Cal.App.2d 595, 600 [43 P.2d 560].

In the Bakersfield case the court points out (p. 162) that ''It is not shown that plaintiff had been through the doorway before.'' ██ In this case the evidence shows that respondent had been a guest for 18 days and had been up and down the stairway a number of times in that interval, but the court's statement that ''the important thing for the court to determine is how much light existed *at the time of the accident*'' indicates that the trier of fact had in mind, naturally, that there must have been varying lighting conditions at the different times when respondent used the stairs.

The evidence is sharply conflicting on the crucial question as to lighting conditions at the time of the injury. The trier of fact found in favor of respondent and the evidence on her side is sufficient to support the findings. If the findings had been in favor of appellants, either as to their negligence or respondent's contributory negligence, we would have to hold the evidence sufficient to support them. In *Toms* v. *Mercantile Arcade Realty Corp.,* 24 Cal.App.2d 700 [76 P.2d 153], cited by appellants (a dimly lighted stairway case) the court found for the defendant. The only question on appeal was whether there was ''substantial evidence to sustain the trial court's finding that plaintiff was contributorily negligent.'' In answering it in the affirmative the court said: ''The law is settled in this jurisdiction that, where different conclusions may reasonably be drawn by different minds from the evidence, the trial court's finding of fact will not be disturbed on appeal. (*Meindersee* v. *Meyers,* 188 Cal. 498, 502 [205 P. 1078].)'' The Toms case serves to illustrate what was said a moment ago respecting findings in favor of the appellants, had they been made in this case.

As said in *DeYoung* v. *DeYoung,* 27 Cal.2d 521, 526 [165 P.2d 457]: ''The power of an appellate court ends with respect to the facts when it determines that there is substantial evidence which supports the trial court's findings. (*Viner* v. *Untrecht,* 26 Cal.2d 261, 267 [158 P.2d 3]; *Strom-*

*erson* v. *Averill,* 22 Cal.2d 808 [141 P.2d 732] ; *Watson* v. *Poore,* 18 Cal.2d 302 [115 P.2d 478].) ''

Appellants' second contention, that ''the evidence affirmatively shows that respondent was guilty of contributory negligence as a matter of law'' has been answered in our discussion of *Hall* v. *Bakersfield Community Hotel Corp., supra,* where, in a case substantially similar, the court held the question to be one of fact.

Appellants' third contention is that there was prejudicial error ''in the exclusion of evidence on custom and habit with regard to the available illumination in the premises,'' the precise question being whether the dining room door was habitually left open between 6 and 6:30 p. m. so that the dining room's ''artificial illumination was available to sufficiently light the situs of the accident.''

The difficulty is that the witness by whom appellants sought to prove custom did not take up residence in the house until August of 1948. Obviously she could not testify as to a custom, if any, prevailing at the time of the accident, some 27 months before she moved there.

Moreover, if any such custom existed one of the proprietors should have been able to prove it. Appellant Wendell Whitlock when asked by his counsel the leading question ''Between the hours of 6 and 6:30 it is open?'' frankly answered: ''I can't say it is always open, but those are the orders the waitresses have, and that is the way it is supposed to be. The guests would leave it open any way.''

Respondent in her brief cites section 17819, Health and Safety Code, which sets up certain lighting standards. That section was touched on during the trial, but not stressed. Respondent's counsel read it, whereupon the court remarked ''Well, that is just practically a codification of what the law already is. If there isn't sufficient light, then you have to illuminate it. All right, next witness.'' There the matter ended. We agree with appellants' counsel that the court did not rely on that provision in reaching its decision and since respondent's counsel did not press the point at the trial we see no need to discuss it now.

Under the heading ''The evidence is insufficient to support the findings'' appellants point to one of the allegations of the amended complaint that there was no handrail on the stairway, while the photographs show beyond question that there was a banister. The court found *all* the allegations (save those respecting damages) to be true. That such find-

ing was incorrect in that it took in too much territory, is apparent. Such error, however, does not require a reversal since the omnibus finding which affirms as true the allegation respecting insufficient lighting is as we have said, amply supported by the evidence and, standing alone, supports the judgment. (2 Cal.Jur. pp. 1028-1029, § 612.)

Finally, appellants point to Mrs. Whitlock's testimony that shortly after the accident respondent said to her "Mrs. Whitlock, . . . I don't blame you for this at all. I know it is my own fault." She testified also that on several later occasions respondent "repeatedly told me she didn't blame me for it." Respondent testified that she did not "converse with Mrs. Whitlock at all about the accident." ▉ This conflict the trier of fact resolved in respondent's favor.

We find no error in the record.

The judgment is affirmed.

Nourse, P. J., and Jones, J. pro tem., concurred.